UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | |
|---|---|
| ANTONIO ARRIOLA, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) Civil No. 3:17-cv-00100-GFVT |
| | ) |
| V. | ) |
| | ) **MEMORANDUM OPINION** |
| COMMONWEALTH OF | ) **&** |
| KENTUCKY, *et al.*, | ) **ORDER** |
| | ) |
| Defendants. | ) |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on Plaintiffs' request for an interim award of attorneys' fees. When a party succeeds on a civil rights claim, the Court has discretion to award the prevailing party attorneys' fees and litigation costs. Aside from a calculation error acknowledged by the Plaintiffs, the Court finds their request to be reasonable and appropriate under 42 U.S.C. § 1988. For the reasons that follow, Plaintiffs' Motion for Attorneys' Fees is **GRANTED**.

**I**

Plaintiffs in this matter are a certified class of current and former inmates in the care and custody of Defendants Commonwealth of Kentucky, Kentucky Department of Corrections (KDOC), and Kentucky Justice and Public Safety Cabinet (the Cabinet). In addition, Plaintiffs have named, individually, Defendant J. Michael Brown, former Secretary of the Cabinet; Defendant John Tilley, current Secretary of the Cabinet; Defendant LaDonna Thompson, former Commissioner of the KDOC; Defendant Rodney Ballard, current Commissioner of the KDOC; Defendant James Erwin, Deputy Commissioner of Adult Institutions; and Defendant Chris E.

Cropp is employed in KDOC's Education Branch. [R. 6 at 3–4.]

This matter was initially filed on September 11, 2012, in Franklin Circuit Court in Franklin County, Kentucky. [R. 14-1 at 1.] After years of discovery and failed mediation attempts, Judge Phillip J. Shepherd of Franklin Circuit Court certified Plaintiffs' class action on June 3, 2015. *Id*. at 2. Judge Shepherd concluded that the inmates were entitled to Educational Good Time (EGT) credit earned since July 15, 2011, and denial of such credit was a deprivation of their due process rights under the Kentucky Constitution and the United States Constitution. *Id*. Additionally, Judge Shepherd found Defendants' administration of the EGT program was arbitrary and capricious, and granted declaratory and injunctive relief to the Plaintiff class. *Id*. at 3. Upon removal, Defendants attempted to have Judge Shepherd's order vacated, but this Court found no reason to modify or dissolve that order. [R. 28.] This Court then ordered parties comply with Judge Shepherd's order, including requiring Defendants to hire an independent auditor to review KDOC's EGT records. *Id*.

After this issue was decided in favor of the Plaintiffs, Plaintiffs moved for an interim award of attorneys' fees pursuant to 42 U.S.C. § 1988(b). [R. 30.] The Court heard argument on the motion, at which time Plaintiffs emphasized the six-year duration of this litigation. [R. 50.] The Court took the motion under advisement and now grants the Plaintiffs' motion.

## II

### A

Parties first disagree on whether Plaintiffs are entitled to attorneys' fees. Plaintiffs amended their complaint to add a claim for a violation of 42 U.S.C. § 1983 in December of 2017, giving this Court federal question jurisdiction over the matter. [R. 1; R. 6.] Pursuant to 42 U.S.C. § 1988(b), a Court has discretion in certain civil rights cases, including those brought

under § 1983, to allow the prevailing party reasonable attorneys' fees.

To recover attorneys' fees, the party must be a "prevailing party." § 1988(b). A "prevailing party" is one who succeeds on a significant issue "which achieves some of the benefit the parties sought in bringing suit." *Farrar v. Hobby*¸ 506 U.S. 103, 109 (1992) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). Here, Plaintiffs have already succeeded on the merits of the case: Judge Shepherd determined the Defendants had acted in an arbitrary and capricious manner and granted the Plaintiffs declaratory and injunctive relief. [R. 14-1 at 3.] That Order remains in force, even after removal to Federal Court. [R. 28.] Plaintiffs have, therefore, achieved a benefit they sought by brining the suit, and they qualify as a "prevailing party" for purposes of § 1988.

Defendants do not argue that Plaintiffs are the prevailing party. They contest, however, that because the Plaintiffs did not bring a § 1983 claim in their initial complaint, and instead added it in their Sixth Amended Complaint, Plaintiffs should only be allowed to recover attorneys' fees beginning in November 2017, the date of filing the Sixth Amended Complaint. [R. 42 at 3.] However, when a pleading is amended, and that amendment asserts a claim arising out of the same conduct, transaction, or occurrence from the original pleading, the amended pleading relates back to the date of the original pleading. Fed. R. Civ. Pro. 15(c). The Sixth Amended Complaint arises from the same conduct alleged in the initial complaint, and therefore, the Sixth Amended Complaint relates back to the date of the original pleading. [*Compare* R. 6 with R. 1-2.] The Court has not found, and Defendants have not provided, any authority to deny costs and fees when a plaintiff asserts a civil rights violation in an amended complaint rather than in the initial complaint.

The parties also disagree to the extent the Prison Litigation Reform Act (PLRA) caps the

3

amount of fees. Here, however, the PLRA provides no such cap. The PLRA permits an award of attorneys' fees to prisoners only if the fee was incurred proving actual violation of the prisoner's rights and authorized by 42 U.S.C. § 1988. 42 U.S.C. § 1997e(d)(1)(A). Furthermore, the amount awarded for attorneys' fees must be proportionally related to the relief ordered by the Court or the fee must have been directly and reasonably incurred enforcing the ordered relief. § 1997e(d)(1)(B). When a monetary judgment is awarded by the Court to a prisoner, up to twenty-five percent of this judgment must be applied to attorneys' fees, with the remaining fees paid by the defendant if the award is no greater than 150% of the total judgment. § 1997e(d)(2). However, "if non-monetary relief is obtained, either with or without money damages, § 1997e(d)(2) would not apply." *Walker v. Bain*, 257 F.3d 660, 667 n. 2 (6th Cir. 2001) (citing *Boivin v. Black*, 225 F.3d 36, 41 n. 4 (1st Cir. 2000)).

Plaintiffs requested damages as well as declaratory and injunctive relief. [R. 6.] The Court has also granted Plaintiffs' declaratory and injunctive relief, finding Defendants' process to be arbitrary and capricious and ordering the completion of an independent audit. [R. 14-1; R. 28.] This non-monetary relief removes this matter from the confines of § 1997e(d)(2), and thus, no 150% cap exists here.

Finally, arguments presented by the Defendants concerning the Eleventh Amendment also fail. The Supreme Court has previously rejected States' claims of immunity when a plaintiff seeks money under § 1988. *See Maher v. Gagne*, 448 U.S. 122, 131–133 (1980). "The Court has never viewed the Eleventh Amendment as barring such awards, even in suits between States and individual litigants." *Hutto v. Finney*, 437 U.S. 678, 698 (1978). Accordingly, the Court finds that Plaintiffs are entitled to attorneys' fees.

**B**

**1**

Once a Court determines a party is entitled to attorneys' fees, the Court must then determine when such fees are owed and how much of those fees should be paid by the opposing party. The Court may award interim attorneys' fees once the Court has "entered a concrete order that determines substantial rights of the parties, meaning when a party has prevailed on the merits of at least some of his claims." *Webster v. Sowders*, 846 F.2d 1032, 1036 (6th Cir. 1988). As stated previously, Plaintiffs have already been granted declaratory and injunctive relief, and they have succeeded on the merits of their claim. [R. 14-1 at 3; R. 28.] Because this litigation has now been pending since 2012, delaying a fee until conclusion of this matter would cause substantial hardship for the Plaintiffs and their attorneys, discouraging future similar civil rights actions. *Webster*, 846 F.2d at 1036 (citing *Bradley v. Richmond School Board*, 416 U.S. 696, 723 (2006).

Plaintiffs initially requested compensation for a total of 1,009.6 hours (687.2 attributed to attorney Gregory A. Belzley and 322.4 attributed to Camille A. Bathurst) at a rate of $220.50 per hour. [R. 30 at 12.] They also requested an award of costs in the amount of $6,313.38. *Id*. at 13. Mr. Belzley and Ms. Bathurst each filed an affidavit, including their itemized expenses and hours spent on this matter. [R. 30-6; R. 30-7; R. 30-8.] Defendants claim this calculation is generally unreasonable, but do not include many specific objections. [R. 42 at 6–9.] To determine reasonable attorney's fees, a Court must first determine the "lodestar" amount, which is the attorney's reasonable hourly rate multiplied by the number of proven hours reasonably expended. *Waldo v. Consumers Energy Co.*, 726 F.3d 802, 821 (6th Cir. 2013).

As an initial matter, the hourly rate awarded to Plaintiffs' counsel is limited to 150% of

the hourly rate established for court-appointed counsel. 42 U.S.C. § 1997e(d)(3). In 2018, court-appointed counsel for non-capital cases are statutorily authorized to bill an hourly rate of $147.[1] Administrative Office of United States Courts, *The Judiciary FY 2018 Congressional Budget Summary Revised*, 37 (June 2017), www.uscourts.gov/sites/default/files/fy_2018_ congressional_budget_summary_0.pdf. One hundred fifty percent of $147 is $220.50. Mr. Belzley has practiced law for twenty-eight years, and he has represented plaintiffs in civil rights litigation for twenty-two years. [R. 30-6.] Ms. Bathurst has practiced law for twenty-seven years, and she has represented plaintiffs in civil rights litigation for eight years. [R. 30-7.] Prior to opening their own practice, both attorneys practiced for well-respected and experienced law firms in Kentucky. *Id*. at 1. The rate of $220.50 per hour is significantly less than fees charged by attorneys in non-PLRA cases. Defendants do not contest this rate and the Court finds it to be reasonable. [R. 42 at 6–9.]

The Court can identify three primary objections Defendants make to the reported hours billed by Mr. Belzley and Ms. Bathurst. First, Defendants specifically object to the time billed for traveling to Shelbyville. [R. 42 at 7.] Plaintiffs acknowledge the error and agree that time should be reduced from 3.7 hours to 1.5 hours. [R. 45 at 6.] Thus, the Court reduces Mr. Belzley's total hours from 687.2 to 685 hours. [*See* R. 30-6 at 17; 29.]

Next, Defendants seem to argue that Plaintiffs should not be able to recover fees for "time spent drafting motions for sanctions and reviewing responses to those motions where no sanctions were ever ordered." [R. 42 at 7.] Similarly, Defendants also object to including time spent drafting the fifth amended complaint when Plaintiffs were never granted leave to file that

---

[1] This rate is also scheduled to remain at $147 per hour in 2019. Administrative Office of the United States Courts, *The Judiciary FY 2019 Congressional Budget Summary Revised*, 38 (February 2018), http://www.uscourts.gov/sites/ default/files/fy_2019_congressional_budget_summary_final_0.pdf.

amended complaint. *Id*. However, *Hensley v. Eckerhart* explicitly states, "When a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. . . . In these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit." 461 U.S. 424, 435 (1983). Defendants have not asked for a reduction of this time, nor have they alleged that the time billed was unreasonable, nor have they presented any legal reason for excluding those fees. [R. 42 at 7.] While the Court recognizes that "'the most critical factor' governing the reasonableness of a fee award 'is the degree of success obtained,'" a reduction should be applied only in rare circumstances. *Waldo*, 726 F.3d at 822 (quoting *Hensley*, 461 U.S. at 436). Here, full recovery is appropriate because Plaintiffs have achieved "excellent results" by succeeding on their injunctive and declaratory relief. *Hensley*, 461 at 435. Plaintiffs' lack of success on those motions does not require a reduced fee. *Id*.

## 2

Finally, Defendants also contest the costs of litigation requested by Plaintiffs. Specifically, Plaintiffs object to costs related to the transcripts of hearings before the Franklin Circuit Court in 2017 as well as the costs for transcripts of depositions taken of Robert Belen, Martha Slemp, and Debbie Kayes. [R. 42 at 7.] Judge Shepherd ordered Defendants to pay one half the costs of transcripts from the hearing, leaving Plaintiffs to pay the other half. *Id*. Plaintiffs now request as costs the other half, totaling $801.51. [R. 30-8 at 3 ($528.13 for half of fees for transcript of 5/8/2017 hearing plus $273.38 for half of fees for transcript of 7/17/2017 hearing).] Defendants seem to suggest, because they were already responsible for half the cost, they should not be responsible for the full cost. Additionally, Defendants object to paying for deposition transcripts on the basis that Special Master Gambill "suggested that depositions were

unnecessary." [R. 42 at 7.]

Under § 1988, Courts may award "those incidental and necessary expenses incurred in furnishing effective and competent representation" to a prevailing party. *Ohio Right to Life Soc'y v. Ohio Elections Comm'n*, 590 F. App'x 597, 605 (6th Cir. 2014) (quoting *Waldo v. Consumers Energy Co.*, 726 F.3d 802, 827 (6th Cir. 2013)). Here, the Plaintiffs have the responsibility to document and provide evidence of the reasonableness of the costs and expenses. *Id.* As to the costs of the transcripts for the evidentiary hearings, simply because the Defendants have already paid for half of the cost does not negate the Plaintiffs' ability to collect the remainder of the cost under § 1988. Defendants' position suggests they would agree that the *full* cost would be reasonable, had Judge Shepherd not already ordered them to pay half, but that paying the other *half* of the total cost is unreasonable. This position is puzzling. The Court cannot find any place in the record where Judge Shepherd precluded Plaintiffs' recovery for those specific costs. Plaintiffs state, and Defendants do not argue otherwise, that these transcripts of evidentiary hearings were essential to filing briefs before Franklin Circuit Court. [R. 45 at 7.]

Furthermore, the Court declines to reduce the Plaintiffs' costs for depositions simply because Special Master Gambill "suggested that depositions were unnecessary." [R. 42 at 7.] Plaintiffs state that these depositions were necessary to prepare for the 2017 evidentiary hearings. [R. 45 at 7.] The Court notes that both the transcripts of the depositions and the transcripts of the hearings are expenses "normally charged to a fee-paying client, in the course of providing legal services." *Waldo*, 736 F.3d at 827 (quoting *Northcross v. Bd. of Educ. Of Memphis City Scho.*, 611 F.2d 624, 639 (6th Cir. 1979)). Using these deposition transcripts and hearing transcripts, the Plaintiffs were able to secure a favorable declaration from Judge Shepherd, and they were

8

able to successfully defend that declaration in this Court. Thus, the Court finds that these services conferred a benefit to the Plaintiffs and were both reasonable and necessary to provide the Plaintiffs with effective representation. *Id*.

After reducing Mr. Belzley's total hours to 685, multiplied by the reasonable hourly rate of $220.50, the Court determines the Plaintiffs' lodestar amount for Mr. Belzley to be $151,042.50. Because the Defendants did not have specific objections to Ms. Bathurst's accounting, her total billed 322.4 hours, multiplied by the reasonable hourly rate of $220.50 results in a lodestar amount of $71,089.20. The Court declines to reduce either of those lodestar amounts based on unsuccessful pleadings or motions. Thus, the total amount of attorneys' fees owed by Defendants to Plaintiffs is $222,131.70. Because the Court finds the costs requested by Plaintiffs to be reasonable and necessary to the litigation, the total amount of costs owed by Defendants to Plaintiffs is $6,313.38.

**III**

In cases concerning civil rights violations, Congress has established a procedure by which the persons responsible for the violation bear the financial responsibility of litigation, rather than the victim. Here, the Court already determined the Defendants deprived Plaintiffs of their due process rights by denying them Educational Good Time Credit and the Defendants' administration of this program was arbitrary and capricious. [R. 28 at 3.] Such a violation of civil rights warrants an award of fees and costs under 42 U.S.C. § 1988. Accordingly, and the Court being sufficiently advised, it is hereby **ORDERED** as follows:

1. Plaintiffs' Motion for Interim Attorneys' Fees [**R. 30**] is **GRANTED**;

2. Defendants **shall pay** Plaintiffs a total of **$222,131.70** in attorneys' fees for the work performed by Mr. Gregory Belzley and Ms. Camille Bathurst; and

9

3. Defendants **shall pay** Plaintiffs a total of **$6,313.38** for litigation costs.

This the 13th day of December, 2018.

Gregory F. Van Tatenhove
United States District Judge