UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | | |
|---|---|---|
| ANTONIO ARRIOLA, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | Civil No. 3:17-cv-00100-GFVT |
| | ) | |
| V. | ) | |
| | ) | **MEMORANDUM OPINION** |
| COMMONWEALTH OF KENTUCKY, | ) | **&** |
| *et al.*, | ) | **ORDER** |
| | ) | |
| Defendants. | | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court upon nonparty Keeton Corrections' Motion to Quash Subpoena. [R. 122.] In its Motion, Keeton asks the Court to quash a subpoena served upon it requiring the production of inmate educational records. *Id.* Keeton argues the subpoena should be quashed because (1) the collection of the records will cause it undue burden and (2) the collection of the records possibly violates the Family Educational Rights and Privacy Act of 1974 ("FERPA"). [R. 122.] For the reasons set out in this Order, Keeton's Motion is **DENIED**.

**I**

This case concerns whether Kentucky Department of Corrections' ("KDOC") inmates received statutorily mandated educational good time credit earned by completing educational courses while incarcerated. [R. 123.] To analyze whether credit was properly received, the Court appointed multi-national accounting firm KPMG LLP to audit the KDOC by analyzing all available educational records relevant to inmates' entitlement to good time credit. *Id.* at 1. To properly conduct the audit, "KPMG requested the production of records from 160 potential sources of information relevant to its audit." *Id.* In response to the requests, all but seventeen

facilities provided the documentation. *Id.*  As of November 4, 2020, only four facilities remained in non-compliance with the requests.  [R. 139.]  Keeton Corrections is the only facility that filed a Motion to Quash Subpoena.[1]  [R. 122.]

Federal Rule of Civil Procedure 26(b)(1) states that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." Fed. R. Civ. P. 26(b)(1).  Federal courts construe this language broadly to include "any matter that bears on, or that reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).  Although federal courts are given broad discretion to determine what information or documents may be obtained based on their relevancy, a Court "must limit discovery that is unreasonably cumulative or duplicative; that can be obtained from another 'more convenient, less burdensome, or less expensive' source; that the seeking party has had ample opportunity to obtain; or that is outside the scope permitted by Fed. R. Civ. P. 26(b)(1). *B.L. Schuhmann*, 2020 U.S. Dist. LEXIS 103641 (W.D.Ky 2020).

Additionally, Fed. R. Civ. P. 45 permits parties to command a nonparty to appear at a certain time and place to testify or produce documents.  Fed. R. Civ. P. 45(a)(1)(A)(iii).  While irrelevance or overbreadth are not specifically listed under Rule 45 as a basis for quashing a subpoena, courts "have held that the scope of discovery under a subpoena is the same as the scope of discovery under Rule 26." *Schuhmann*, at *8 (quoting *Hendricks v. Total Quality Logistics*, 275 F.R.D. 251, 253 (S.D. Ohio 2011)).  A Court must quash any subpoena that imposes an undue burden or expense on the person subject to the subpoena, fails to allow

---

[1] Unlike Keeton, the remaining facilities in non-compliance with the Court's subpoena waived their ability to dispute the subpoena by failing to file a Motion to Quash. [R. 122.] Plaintiffs' Motion to Compel Compliance with Subpoena was granted on September 25, 2020. [R. 127.]

reasonable time to comply, requires compliance beyond the geographic limits of Rule 45, or requires disclosure of "privileged or other protected matter, if no exception or waiver applies." Fed. R. Civ. P. 45(d)(1), (d)(3)(A)(i)-(iv).  The "undue burden category encompasses situations where the subpoena seeks information irrelevant to the case. Moreover, [a] subpoena imposes an undue burden on a party when [it] is overbroad." *Jackson v. Gogel*, 2015 U.S. Dist. LEXIS 70373 (E.D.Ky. 2015).  Finally, other than the showing required by Fed. R. Civ. P. 45(d)(3)(C), the "party seeking to quash a subpoena bears the ultimate burden of proof." *Schuhmann*, at *8 (quoting *Hendricks v. Total Quality Logistics*, 275 F.R.D. 251, 253 (S.D. Ohio 2011)).

## II

### A

Because Keeton has moved to quash the Plaintiffs' subpoena, it has the burden of persuasion. *Id.* Here, Keeton first argues that compliance with the subpoena will cause it undue burden, therefore Rule 45 requires its quashing. The subpoena served upon Keeton commands the following:

> Keeton [must] produce all certificates, diplomas, transcripts, and other documentation (electronic and paper) that identifies completion of a class, course, or program, for individuals housed at, supervised by, or enrolled at Keeton and all attendance records (electronic and paper) for individuals housed at, supervised by, or enrolled at Keeton. Both requests include records from January 1, 2007 to December 31, 2019, a twelve (12) year span. [R. 122 at 1.]

In its Motion, Keeton states it would be subjected to an undue burden if compliance is imposed because "there are more than 4,000 and perhaps as many as 6,000 individual inmates whose records would have to be examined." [R. 122 at 2.] Keeton estimates it would require "4,000 man hours to accomplish this task." *Id.* at 3. Additionally, Keeton states that this task would require an examination of twelve years of records to extract the requested information from each record and that this process would cost up to $100,000. *Id.* at 3.  At a status conference held by

3

videoconference on November 4, 2020, Keeton argued that it is a private entity with a staff of only three people. [R. 139.] Additionally, Keeton argued that it is unsure if any records it has in its possession are relevant to the audit[2] and that the task presents an "insurmountable task." *Id.*

In its Motion in Response, Plaintiffs first refer to *Brown v. Tax Ease Lien Servicing*, LLC, 2017 U.S. Dist. LEXIS 215979 (W.D. Ky. Aug. 21, 2017). In *Brown*, the Western District of Kentucky stated "to successfully claim undue burden as a ground to quash under Rule 45(d)(3)(A)(iv) [a party] ordinarily must establish that the challenged subpoena is overbroad and seeks information irrelevant, or only marginally relevant given the burden of production, to the case at hand." *Brown* at *2. Plaintiffs argue this language in *Brown* requires a moving party to show that a subpoena's requested documents are both overbroad *and* irrelevant to quash. [R. 3 at 3.] Plaintiffs state that, because Keeton only claims the subpoena is overbroad and not that its documents are irrelevant, its Motion to Quash must be denied. *Id.* The Court is unpersuaded by this argument and declines to interpret *Brown* as requiring a showing that a subpoena is both overbroad and irrelevant to present a successful argument to quash.[3]

Furthermore, the Court need not decide whether Keeton's Motion to Quash relies on the semantics of non-binding case law because Keeton's Motion fails to establish undue burden as required under the clear text of Rule 45. Although Keeton argues that undue burden exists due to the cost, time needed to collect the requested records, and limited number of employees at its facility, this evidence fails to overcome the Plaintiffs' interests in the matter. [R. 122 at 2-3; R.

---

[2] At the status conference held on November 4, 2020, Keeton represented itself as a "halfway house" and stated that it is unsure whether it has relevant educational records in its possession. Plaintiffs argue that the purpose of the audit is to analyze these records and establish certainty in the matter. *See* [R. 139.]
[3] In the following paragraph of *Brown*, the Western District of Kentucky cites additional case law which states that the scope of discovery under a subpoena is the same as under Rule 26(b) and Rule 34. *See Brown* at *5 ("the court must examine whether a request contained in a subepoena duces tecum is overly broad *or* seeking irrelevant information . . . ) (emphasis added) (quoting *Transcor, Inc. v. Furney Charters, Inc.*, 212 F.R.D. 588, 591 (D. Kan. 2003)).

139.] At issue in this case is the liberty interests of previously and currently incarcerated Kentucky inmates. [R. 139.] In fact, at the November 4, 2020 status conference, Plaintiffs stated that the records of over 1200 Kentucky inmates have been corrected since this audit began and that these records now accurately reflect appropriate sentence lengths[4]. *Id.* Additionally, Keeton fails to convince the Court that it should be exempted from the production of records in this matter when over 150 other Kentucky facilities have complied without issue. [R. 123; R. 139.] While the Court understands that Keeton is a private facility, other private facilities have complied with the subpoena and have not required its quashing.[5] The liberty interest of inmates potentially subjected to imprisonment beyond that which justice requires simply outweighs Keeton's alleged financial and logistical barriers to compliance.

**B**

Next, Keeton suggests that FERPA might forbid its compliance with the subpoena. [R. 122 at 3.] Under FERPA, educational institutions' ability to release student educational records is limited by statute. *See* 20 U.S.C. § 1232(g)(b). Keeton states that, although it is likely not an educational institution directly contemplated by FERPA, the subpoena requests the release of educational records which, by implication, creates concern about the legality of compliance. *Id.* Keeton alleges that no exception under FERPA permits the release of any educational records it may possess and thus it is precluded from compliance. *Id.* In response, Plaintiffs argue that Keeton is not an "educational institution" and is not bound by FERPA. [R. 123 at. 4.] Plaintiffs

---

[4] At the status conference, the General Counsel for the Kentucky Cabinet for Justice and Public Safety clarified that not all 1200 inmates' records were corrected as a result of proven recordkeeping errors. Instead, some records were adjusted due to compromise between the parties. Nonetheless, the liberty interests of these inmates were still affected as a result of the records attained for the ongoing audit. [R. 139.]

[5] Most recently, Aramark and The Salvation Army, both private facilities, complied with the subpoena. [R. 139.]

also argue that, even if FERPA applies, all class members waive their rights to protection. *Id*; *see* 20 U.S.C. § 1232(e) (granting students over the age of eighteen all rights to grant consent to the release of educational records). Finally, Plaintiffs argue that multiple exceptions under FERPA permit the release of these records. [R. 4-5.] The Court agrees with Plaintiffs. Ultimately, it is not necessary to determine whether any exceptions under FERPA apply or whether the students here have properly granted consent for the release of their educational records because the Sixth Circuit has made clear that Keeton is not bound by FERPA. In *Desmone v. Adams*, an imprisoned father sued the Michigan Department of Corrections' Ionia Temporary Facility ("ITF") when ITF would not provide him with unredacted copies of his child's educational records. The Sixth Circuit ruled that his claim must fail because "FERPA by its terms applies only to educational agencies," and, "[b]ecause the defendants are not an educational institution, [plaintiff] has no cause of action against them under FERPA." LEXIS 24030 at *4 (6th Cir. 1998). *Desmone* indicates that Keeton's argument is meritless.

### III

Accordingly, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** that nonparty Keeton Corrections' Motion to Quash **[R. 122]** is **DENIED**. Keeton Corrections must provide Plaintiffs the relevant documents in accordance with its subpoena within fourteen **(14) days** from the date of this Order.

This the 9th day of November, 2020.

Gregory F. Van Tatenhove
United States District Judge

7