

# Education Good Time Review Results

**Analyzing the education good time program to help improve accuracy and offender outcomes for Kentucky**

September 23, 2021

———

kpmg.com

# Contents

Overview ................................................................................................................. 1

Key Results ............................................................................................................. 4

Data Collection ....................................................................................................... 14

Review Process ...................................................................................................... 20

Appendix A – KPMG Consolidated Results Database ............................................ 24

Appendix B(1) – DOC Signed Memoranda for Record ........................................... 25

Appendix B(2) – Record Changes for Offenders in Custody or Under Supervision ................... 28

Appendix C – Potential Type 2 Errors -Records for Which the DOC has Denied Credit and Deferred Review Pending Further Consideration by Parties and/or Court Adjudication ............................................................................................................... 29

Appendix D – Status of Decision Points .................................................................. 31

© 2021 KPMG LLP, a Delaware limited liability partnership and a member firm of the KPMG global organization of independent member firms affiliated with KPMG International Limited, a private English company limited by guarantee. All rights reserved. NDP159782-1A

The KPMG name and logo are trademarks used under license by the independent member firms of the KPMG global organization.

# Overview

In November 2017, Judge Phillip J. Shepherd ordered an "outside independent auditing firm…to construct, from all available records, databases, and sources, a comprehensive list of all class members who have taken correctional education and behavioral programming courses since 2007, indicating what courses were taken, when such courses were taken, whether the class member was awarded sentence credits for completing such courses, and, if so, how much credit was awarded to each inmate."[1] On January 22, 2019, Judge Gregory F. Van Tatenhove appointed KPMG as the "independent" party to conduct the review and "analyze all available education records relevant to inmates' entitlement to good time credit".[2,3]

As a customary part of a typical audit or review effort, KPMG obtained an understanding of the Commonwealth of Kentucky's Department of Corrections (DOC) policies, processes, and systems associated with the EGT program and its administration. KPMG's starting point for our investigations was Judge Van Tatenhove's finding, as noted in the November 2017 Court Order, that the Kentucky Offender Management System (KOMS) is "not, in fact, a reliable source of information." Indeed, KPMG's investigations into the DOC policies, processes, training, systems, and records provided insights into why KOMS is not a reliable source of information for the education and program good time (EGT) program.[4] Foremost, KPMG observed (1) insufficient oversight and quality assurance in the administration and management of the program, (2) the lack of a course catalog and comprehensive awareness of education and programming offered and provided to offenders, (3) training deficiencies and information flow challenges between and among the DOC and jails housing state offenders, and (4) a process that allocated responsibility to offenders to ensure the accuracy of DOC record-keeping and whether appropriate credit was awarded. As detailed in the Course Catalog section in this report, a comprehensive list of qualifying courses and programs did not exist until it was compiled as part of KPMG's review plan. Such a list is required to understand and consider what courses and programs should and should not be awarded credit over time.

Our team made these observations after examining KOMS and conducting the following site visits, which were required to develop and refine our approach to build an "independent credit database," per Judge Van Tatenhove's January 2019 order:

---

[1] *Arriola v. Commonwealth of Kentucky, et al.*, Order and Opinion, November 7, 2017.
[2] *Arriola v. Commonwealth of Kentucky, et al.*, Order, January 22, 2019.
[3] *Arriola v. Commonwealth of Kentucky, et al.*, Memorandum Opinion and Order, November 9, 2020.
[4] Our team experienced challenges connecting offenders across Referral, Assignment, Achievement and Credit tables in KOMS, discovering data anomalies such as courses with more achievements than referrals (e.g., GED), courses with more credits than achievements (e.g., Electrical (Vo-Tech)), and courses that were presumably taught as they were captured in the course catalog but had 0 referrals, 0 assignments, and 0 achievements (e.g., Changes). Moreover, in analyzing records collected and comparing them against KOMS for those courses in the course catalog that received credit, we found that 26 had zero associated completions, 16 courses had between 1-10 completions, and 11 courses had between 11-50 completions. Incomplete records retention may explain zero and low completion documentation for these courses. The DOC may also offer other explanations.

| Operational Level | Number of interviews with staff |
|---|---|
| DOC | 9 |
| Prisons | 13 |
| Jails | 74 |
| Probation & Parole | 21 |

KPMG shared our approach and plan with the Parties at an initial meeting on February 20, 2019. In the months that followed, our team provided and facilitated over 15 meetings with the Parties and Judge Cleve Gambill during which they reviewed and approved the approach and were provided updates on in-flight progress of records reviews.[5] As the November 2017 Court Order did not establish an end date for records in scope, KPMG proceeded to investigate good time documentation in tranches (Tranches), processing each according to the same procedure. On March 12, 2021, Judge Van Tatenhove issued a Court Order closing the class action as of January 31, 2021.[6] Accordingly, this report summarizes results in four Tranches, whose applicable dates are shown in the table below:

| Tranche Number | Dates Education Good Time Earned |
|---|---|
| Tranche 1 | January 1, 2007 to December 31, 2018 |
| Tranche 2 | January 1, 2019 to December 31, 2019 |
| Tranche 3 | January 1, 2020 to December 31, 2020 |
| Tranche 4 | January 1, 2021 to January 31, 2021 |

**Meeting the planned timeline while adhering to professional standards, KPMG has substantially completed processing and analyzing all Tranches of records as of the date of this Report.** However, because the DOC has deferred validation efforts for records potentially affected by unresolved Decision Points or those resolved in principle but not in application (*see* Appendix D), substantial quality assurance and supporting analysis may need to be accomplished to ensure appropriate credit eligibility pending agreement by the Parties and/or Court adjudication.[7] For example, the DOC has deemed Malachi Dads, a program specifically highlighted in the Plaintiff's complaint for the Court's consideration, as ineligible for credit. The DOC has also deemed over 7,000 KCTCS certificates and certifications as ineligible, a point of disagreement among the parties pending court adjudication. Additionally, certain Decision Points may require that KPMG assemble lists and/or reanalyze data to determine additional eligible offenders and errors. For example, KRS 197.045 allows credit for sex offenders deemed, to quote the law, "mentally

---

[5] The "Parties" throughout this report refer to counsel for the Plaintiffs, Greg Belzley and Camille Bathurst, and Defendants, Robyn Bender, Angela Dunham, Allison Brown, and Mark Bizzell. In the previous administration, Stacy Woodrum and others participated in the meetings representing the Commonwealth. As noted by the October 21, 2020 Memorandum to the Parties, "The audit approach and methodology followed by KPMG was approved by the previous administration [and] reviewed multiple times by the current administration."

[6] *Arriola v. Commonwealth of Kentucky, et al.*, Agreed Order Regarding Closure Date of Plaintiff Class, March 12, 2021.

[7] Decision Points are questions developed by KPMG and submitted to the Parties and Judge Gambill to clarify and guide the nature of the review plan. They also inform whether education and/or programming completions in question are eligible for credit, and if so, how much (*see* discussion in Appendix D).

retarded" or "intellectually disabled." However, given the DOC's previous practice of not defining, identifying or tracking this population, KPMG would, if the Court directs, need to re-examine affected offenders once criteria for inclusion and eligibility are determined.

Lastly, just before completing this report, KPMG received 8,248 records from 12 facilities, including NOA Counseling, Brighton Recovery Center for Women, Bell County Detention Center, and Center Point Recovery Center, among others. Given the size of this batch of records, our team will have to classify, extract, compare, and report on these records by issuing a revised version of this report to with the results of our analysis reflected, upon direction by the Parties and/or the Court.

Note: This report contains embedded hyperlinks, which are identified in blue underline. Clicking on those hyperlinks will access underlying source documents such as DOC-leadership signed Memorandums for Record documenting validated results of inmate records reviews.

# Key Results

**Fulfilling KPMG's obligation per the November 2017 Court Order, Appendix A provides a "comprehensive list of [all offenders] who have taken correctional education and behavioral programming courses since 2007."**[8]
Building the independent database required a massive effort, to include conducting over 100 interviews, examining nearly 2 million records from 184 providers over a 14-year time frame, compiling historical course catalogs from scratch, and categorizing cases that required clarification into 20 Decision Points to enable the Parties and the Court to move the class action lawsuit forward.

The Excel spreadsheet format of the database allows the Parties to manipulate the data through filtering and sorting. However, please note that while the consolidated results database indicates that KPMG discovered evidence that these offenders completed education, programming, courses, activities, etc., it does not necessarily mean those offenders are owed good time credit for those completions. For example, the Parties and/or the Court may determine that many of these activities are not eligible for credit (please refer to Appendix D for a summary of ongoing Party discussions, agreements, and unresolved issues).

As the Parties come to agreement and/or the Court adjudicates which completions should and should not receive credit, the results can be grouped into four categories by comparing the credit database against KOMS – these four categories are typically used in a statistical context and the word "error" is used where a discrepancy occurred. This terminology was presented to and used by the Parties over the entire course of the review. Nevertheless, **the word "error" is not intended to ascribe fault to any party.**
Please note: the Commonwealth updated certain inmate records after the Parties came to agreements on some of the Decision Points



(*see* Appendix D), moving the case forward to resolution. The two categories in the upper left and lower right of the diagram represent cases where there is no error. However, the other two categories represent potential errors. **Type 1 Errors represent cases where offenders were given but did not necessarily earn credit, while Type 2 Errors represent cases when offenders earned but were not awarded credit.**

Based on direction from the Parties, DOC and KPMG prioritized the identification of Type 2 Errors with the goal of preventing offenders from remaining in custody or under supervision longer than appropriate. Accordingly, KPMG and DOC established a validation process on a rolling basis to confirm potential Type 1 and 2 Errors after analyzing a series of Systems of Record, data collected from third-party providers and other organizations (*see* Data Collection section of this report).

---

[8] *Arriola v. Commonwealth of Kentucky, et al.*, Order and Opinion, November 7, 2017.

## Total Type 2 Errors (to date)

**KPMG identified a significant number of validated and potential Type 2 Errors.** The table below summarizes results, which include (1) Type 2 Errors validated by the DOC (i.e., cases where the DOC validated our review results, documented in signed Memoranda of Record or emails (*see* Appendix B(1)); and (2) Potential Type 2 Errors - Records for which the DOC has Denied Credit and Deferred Review Pending Further Negotiation by the Parties and/or Court Adjudication:[9]

| | Number of Records | Resulting Days (Years) | Number of Offenders |
|---|---|---|---|
| Type 2 Errors Validated by the DOC | 3,900 | 252,630 (692 years) | 3,655 |
| Potential Type 2 Errors - Records for which the DOC has Denied Credit and Deferred Review Pending Further Negotiation by the Parties and/or Court Adjudication) | 12,429 | 745,350 (2,042 years) | 6,006 |
| **Total** | **16,329** | **997,980 (2,734 years)** | **9,661** |

**The ultimate number of Type 2 Errors remains dependent on resolution of Decision Points by the Parties and/or the Court** (for example, whether credit is awarded to offenders who completed Malachi Dads, KCTCS Certificates/Certifications, and other programs for which the DOC currently does not award credit). Additionally, additional information, such as the determination of which offenders are deemed, to quote the law, "mentally retarded" or "intellectually disabled," may change credit eligibility.

The following sections provide detailed breakdowns of validated and potential Type 2 Errors.

## Detailed Breakdown of Type 2 Errors Validated by the DOC

Appendix B(1) documenting the 3,900 "Type 2 Errors Validated by the DOC." It contains Memoranda for Record signed by the DOC leadership validating the results of KPMG analysis. The following table lists error numbers associated with each and provides a breakout of offender status provided by the DOC:

| | Type 2 Error Group | No Longer in Custody | Still in Custody, Updated Record | Deceased | Non-Categorized | Total |
|---|---|---|---|---|---|---|
| 1 | National Career Readiness Certificate (NCRC) Post-2016 | 375 | 780 | 3 | - | 1,158 |
| 2 | KY Department of Education (ED) General Educational Development (GED) | 530 | 57 | - | - | 587 |
| 3 | Tranche 1 Group 2 | 227 | 47 | 5 | - | 279 |

---

[9] *Note*: Offenders may appear on multiple lists, hence the use of the word "records."

| | Type 2 Error Group | No Longer in Custody | Still in Custody, Updated Record | Deceased | Non-Categorized | Total |
|---|---|---|---|---|---|---|
| 4 | Reconsideration Per Litigation Crosswalk* | - | - | - | 245 | 245 |
| 5 | Credit voids or denials due to GED Presentence Investigation (PSI) | 95 | 78 | - | - | 173 |
| 6 | Violent Offenders Program* | - | - | - | 166 | 166 |
| 7 | KCTCS Diplomas | 114 | 35 | 6 | - | 155 |
| 8 | Course Catalog to Program Achievements Analysis | 126 | 6 | 1 | - | 133 |
| 9 | Kentucky Community and Technical College System (KCTCS) Associate Degrees | 89 | 28 | 2 | - | 119 |
| 10 | Tranche 3 Group 1 System of Record | 31 | 83 | 1 | - | 115 |
| 11 | Tranche 1 Group 1 | 65 | 36 | 1 | - | 102 |
| 12 | Responsible Thinking Program* | 54 | 38 | - | - | 92 |
| 13 | Tranche 2 OCR | 50 | 35 | - | - | 85 |
| 14 | Tranche 3 Group 2 OCR | 17 | 52 | - | - | 69 |
| 15 | Tranche 3 Group 1 OCR | 21 | 28 | 2 | - | 51 |
| 16 | NCRC SoR | 34 | 8 | 2 | - | 44 |
| 17 | Financial Peace University* | 13 | 28 | - | - | 41 |
| 18 | National Occupational Competency Testing Institute (NOCTI) Industry Credentials & Certifications | 29 | 11 | - | - | 40 |
| 19 | VT Fundamentals[10] | 21 | 8 | 1 | - | 30 |

[10] An outcome of DP 3(a) agreement by the Parties.

| | Type 2 Error Group | No Longer in Custody | Still in Custody, Updated Record | Deceased | Non-Categorized | Total |
|---|---|---|---|---|---|---|
| 20 | Substance Abuse Program (SAP) | 18 | 8 | 2 | - | 28 |
| 21 | Cage Your Rage Program* | 3 | 19 | - | - | 22 |
| 22 | KCTCS Tranche 2 | 4 | 14 | - | - | 18 |
| 23 | Tranche 2 System of Record | 8 | 9 | 1 | - | 18 |
| 24 | Tranche 3 Group 2 SoR | 10 | 5 | - | - | 15 |
| 25 | Tranche 1 Group 1 – Additional Records | 11 | 3 | - | - | 14 |
| 26 | Volunteers of America (VOA) SAP | 7 | 6 | - | - | 13 |
| 27 | Classification | 7 | 5 | - | - | 12 |
| 28 | CoreCivic | 7 | 3 | - | - | 10 |
| 29 | Healthy Lifestyle Program* | 5 | 2 | - | - | 7 |
| 30 | National Center for Construction Education and Research (NCCER) | 6 | 1 | - | - | 7 |
| 31 | NOA | 4 | 3 | - | - | 7 |
| 32 | Tranche 3 NCCER Additional Records | 2 | 5 | - | - | 7 |
| 33 | Tranche 4 Group 1 SoR | 5 | 2 | - | - | 7 |
| 34 | Division of Reentry Services | 4 | 2 | - | - | 6 |
| 35 | Tranche 4 Group 1 OCR | 2 | 3 | - | - | 5 |
| 36 | Credit voids or denials due to Prerequisites | 3 | 1 | - | - | 4 |
| 37 | Credit voids or denials due to Similar Subjects | 4 | - | - | - | 4 |
| 38 | Bluegrass Regional Recycling Corporation (BRRC) | 2 | 1 | 1 | - | 4 |
| 39 | Ad-Hoc* | 1 | 2 | - | - | 3 |

| | Type 2 Error Group | No Longer in Custody | Still in Custody, Updated Record | Deceased | Non-Categorized | Total |
|---|---|---|---|---|---|---|
| 40 | Tranche 2 NCCER | 1 | 1 | - | - | 2 |
| 41 | Special Admissions[11] | 1 | 1 | - | - | 2 |
| 42 | Tranche 3 OCR Additional Records | - | 1 | - | - | 1 |
| | **Totals** | **2,006** | **1,455** | **28** | **411** | **3,900** |

*These Type 2 errors were borne from discussions with the DOC. The DOC reviewed and provided KPMG with a list of these errors via email.*

The following chart graphically depicts the number of validated errors by year since 2007, the beginning of the class action:

**Type 2 Errors by Year**



The chart documents **an increasing trend of 14 years of insufficient, inconsistent, incomplete, and inaccurate EGT administration and management**. Errors were widely distributed among facilities, programs, and over the entire scope of review. In fact, errors continued even after KPMG's Court-appointed review began. Please note: some of the Type 2 errors presented above were the result of Decision Point agreements to award credit, such as NCRC credit, which constitutes a large number of Type 2 errors from 2016-2020. As a result of this ongoing analysis and review, the Commonwealth has acknowledged past deficiencies in administering and managing its EGT program: **"It was apparent that over the years we had not adequately tracked who was doing what, what they were getting credit for, and how that credit was applied to the sentence,"** stated Justice and Public Safety Cabinet Secretary

---

[11] Offenders A, B, and C were three cases identified during discussions between KPMG and the DOC staff that involve special admissions status (email from Amanda Sayle, "RE: Names of Special Case offenders who had or will have their records updated," 1/7/2021).

Mary Noble during her June 3, 2021 presentation before the KY Legislature's Interim Committee on Justice and the Judiciary.[12]

## Potential Type 2 Errors - Records for which the DOC has Denied Credit and Deferred Review Pending Further Negotiation by the Parties and/or Court Adjudication

**To facilitate discussion between the Parties and to help focus, prioritize, and expedite KPMG's review efforts, KPMG and the DOC identified twenty Decision Points for clarification by the Parties, some of which remain unresolved or where agreement by the Parties was obtained in principle but disagreement still exists in applying to offender records (*see* Appendix D).[13]**

For unresolved and resolved-in-principle-but-not-application Decision Points, the table below provides a breakout of potential Type 2 errors.[14] These potential Type 2 errors are intended to provide the Parties and the Court an indication of the magnitude of each individual decision point; the actual number of Type 2 errors can only be determined once a final resolution by the Parties and/or the Court is provided.

| Decision Point Description | Potential Type 2 Errors |
|---|---|
| DP 1: Offenders who completed the NOCTI Workplace Readiness program | 7 |
| DP 3(a): Offenders enrolled in VT Fundamentals prior to October 2012 but completed after October 2012 | 64 |
| DP 4: Offenders denied credit due to lack of attendance records | 31 |
| DP 8(c): Offenders who completed the VOA Halfway Back program and received either 45 or 90 days of credit | 77 |
| DP 11(a): Offenders who completed NCRC and did not receive credit but are currently enrolled in a Vocational Technical (VoTech) program | 40 |
| DP 11(a): Offenders who completed NCRC and did not receive credit but the DOC asked to defer their confirmation of these as Type 2 errors | 13 |
| DP 12(a) and (b): KCTCS Certifications and Certificates | 7,253 |
| DP 13: Courses in the course catalog that the DOC denies are eligible for credit (e.g., Malachi Dads) | 1,883 (*see* breakout table below) |
| DP 13(a):  Offenders who did not receive credit due to a course being deemed ineligible for programs completed but not mapped to the Course Catalog (filter on Appendix A based on course name)[15] | 2,388 (*see* breakout table below) |
| DP 14: Offenders whose release was delayed due to the processing time of sentence credits | 11 |
| DP 17: Offenders who were denied credit due to completing a course at an unapproved location | 582 |

---

[12] https://apps.legislature.ky.gov/minutes/judiciar/210603ok.pdf.
[13] These agreements were documented during meetings with the Parties and later circulated for confirmation.
[14] All decision points, including those that were resolved by the Parties, are discussed in Appendix D.
[15] Documents associated with these courses were not fully processed as there was not a corresponding course in the course catalog. As such, the offenders associated with these have not been fully reviewed. A list of these offenders could be provided at a later date, if required.

| Decision Point Description | Potential Type 2 Errors |
|---|---|
| DP 18:  Offenders with conflicting completion documentation[16] | 41 |
| DP 19:  Sex Offender potential Type 2s who have not yet completed the Sex Offender Treatment Program (SOTP) but are still in prison (suspended or missing credits)[17] | 24 |
| DP 20:  NOA treatment summaries indicating completion but DOC "requirements" not met | 15 |
| **Total** | **12,429** |

*See* Appendix D for context and more detailed discussion of each Decision Point identified by KPMG and the DOC, then presented to and discussed with the Parties, including their present status as Resolved, Unresolved or Resolved in Principle but Not Application. The table below summarizes potential Type 2 Errors associated with Decision Point 13, which are courses in the course catalog that the DOC denies are eligible for credit (e.g., Malachi Dads):

| | DP 13 Course Name | # of Documents Received |
|---|---|---|
| 1 | AA Recovery | 252 |
| 2 | Anger Management/Emotional Awareness | 209 |
| 3 | Celebrate Recovery | 171 |
| 4 | Nurturing Parenting | 128 |
| 5 | New Pathways for Fathers & Families | 124 |
| 6 | Life Skills Development Program | 112 |
| 7 | Malachi Dads Program | 83 |
| 8 | Alcoholics Anonymous (A.A.) | 76 |
| 9 | Parenting Program | 61 |
| 10 | Nutrition Education Program | 59 |
| - | Other Courses | 608 |
| **Total** | | **1,883** |

Similarly, the table below summarizes potential Type 2 Errors associated with Decision Point 13(a), which are offenders who did not receive credit due to a course being deemed ineligible for programs completed but not mapped to the Course Catalog (filter on Appendix A based on course name):

---

[16] These are records where, for example, KPMG collected completion documents from facilities and/or providers but the DOC has information to suggest the offender may not have finished the program. *See* Appendix D.

[17] KPMG reviewed 666 offenders that were flagged as potentially subject to this decision point. These offenders were reviewed to differentiate those that had a suspended credit versus those that had a missing credit. In addition, these offenders were also evaluated to determine if the SOTP had been completed since the initial review. Based on these criteria, KPMG identified 24 offenders that may be considered Type 2 errors as their credits were missing or were still suspended (i.e., ineligible) after completing their SOTP. Through this analysis, KPMG also identified 132 of the 666 offenders who may become eligible to earn credit for the courses/programs completed if SOTP is completed. These 132 offenders are currently in prison and have a non-suspended credit (i.e., missing, void, qualified, etc.) in their sentence debit/credit table.

|   | Course Name | # of Documents Received |
|---|---|---|
| 1 | 12 Steps to Financial Success | 180 |
| 2 | Reentry Program | 100 |
| 3 | HIV / Aids Course | 93 |
| 4 | Drug and Alcohol Education | 80 |
| 5 | Successful Transition Employment Education Program | 76 |
| 6 | Work Ready Dependability, Attitude, Self - Presentation, Conflict Resolution, Team Building, and Safety Certificate | 60 |
| 7 | Financial Recovery Training | 50 |
| 8 | Tree Anatomy | 42 |
| 9 | Tree Physiology | 40 |
| 10 | Financial and Relationship Peace - Foundation Skills | 34 |
| - | Other Courses | 1,633 |
| **Total** | | **2,388** |

The tables above contain courses that appear to be similar to other courses that receive credit. Note: KPMG offers no opinion on which programs should or should not receive credit; we only compiled whom may be eligible for credit based on what the Court and/or Parties decide.

## Type 1 Errors

**In addition to identifying validated and potential Type 2 Errors (credits not awarded where completions evident/allowed by DOC), KPMG identified Type 1 Errors (credits awarded where completions not evident/allowed by DOC) after examining 10 primary data sets.** *See* the Type 1 error tab in Appendix A for a list of these offender names.

| | Data Set | Description | Total Potential Type 1 Errors |
|---|---|---|---|
| 1 | SAP | Offenders who received multiple SAP credits during the same commitment prior to September 2018 | 529 |
| 2 | Database Type 1 | Offenders who received credit when they were not eligible - identified during our review of Type 2 errors | 394 |
| 3 | Parole* | Offenders who received credit while on parole prior to June 2011 | 33[18] |
| 4 | Not Incarcerated | Offenders who received credit while they were not incarcerated (i.e., discharged, probation) | 239 |
| 5 | MRT* | Offenders who received multiple MRT (Moral Reconation Therapy) credits during the same commitment | 164 |
| 6 | Course Catalog | Offenders who received less credit than specified by the course catalog | 38 |
| 7 | NCRC | Offenders either earned duplicate credit for completing NCRC or, per Decision Point 11 agreement, could not receive credit for both NCRC and Vocational Training | 36 |
| 8 | Multiple Credits* | Offenders who received multiple credits for the same program during the same commitment | 34 |
| 9 | NCRC Pre-2016* | Offenders who received credit for NCRC prior to 2016 | 12 |
| 10 | Wrong Inmate | Offenders who received credit meant for a different offender | 1 |
| | | **Total** | **1,480** |

*\* Final DOC review pending further adjudication by the Parties and/or the Court.*

Please note that Decision Point outcomes decided by the Parties and/or the Court will affect Type 1 and 2 totals. For example, DP 16 will affect Type 1 and 2 totals for the SAP, MRT, and Multiple Credits datasets. KPMG identified offenders who received multiple credits for completing the same program during the same commitment. If multiple credits are not allowed, then these will remain Type 1 Errors. Conversely, if multiple credits for the same program on the same commitment are allowed, then those who failed to receive credit will be classified as Type 2 Errors. For example, in the case of MRT, the DOC awarded credit to some but not all inmates who completed multiple MRT programs. If the Court potentially decides to require consistency in inmate treatment, either the 161 inmates who did not receive credit will receive credit (Type 2 Errors) or those 164 that did receive credit will have their credits removed (Type 1 Errors).

## Additional Type 1 and 2 Errors

**As stated above, it is important to highlight that the outcome of clarifications by the Parties and/or adjudication by the Court will change the total number of Type 1 and 2 Errors.** For example, DP 9 addresses, to quote the law, "mentally retarded" or "intellectually disabled" sex offenders who are, according to KRS 197.045, able to earn credit without first completing the Sex Offender Treatment Program. Given the DOC's previous practice of not

---

[18] The DOC conceded that 33 Type 1 errors. Appendix A includes all records submitted to the DOC with 26 highlighted records indicating the ones conceded by the DOC. The remaining conceded records is not known by KPMG.

defining, identifying or tracking this population, KPMG is currently unable to produce a list of offenders who are affected by this Decision Point. Records will need to be re-examined once criteria for inclusion and eligibility are determined by the Parties and/or the Court.

Additionally, DP 12, which addresses KCTCS Certificates and Certifications, offers another significant example. Certificates and Certifications alone represent 7,225 potential records where offenders may be eligible for credit pending Party clarification or Court adjudication. All those documents require additional work as the DOC has chosen to defer dialogue pending court decisions. Finally, DP 13, which addresses whether to award credit for programs that currently do not earn credit under the KPMG-assembled Course Catalog (e.g., Malachi Dads, a program specifically called out in the lawsuit) and those programs that are not mapped to the Course Catalog have the potential to substantially affect the total number of Type 1 and 2 Errors, numbering in the thousands.

# Data Collection

The November 2017 Court Order detailed the review requirement to "construct, from all available records, databases, and sources, a comprehensive list of all class members who have taken correctional education and behavioral programming since 2007, indicating what courses were taken, when such courses were taken, whether the class member was awarded sentence credit for completing such courses, and if so, how much credit was awarded to each inmate."[19] The Court Order also noted that KOMS is "not, in fact, a reliable source of information."[20] As such, KPMG developed a separate Credit Database of available records from January 1, 2007 to January 31, 2021, the end of the class. The credit database consists of three components – offender list, course catalog, and source information.



## Offender Information

Per the November 2017 Court Order, KPMG was directed to identify "**a comprehensive list of all class members who have taken correctional education and behavioral programming since 2007**."[21] As the Court noted, KOMS is unreliable with respect to education good time records, and KPMG was unable to rely on a list of offenders from KOMS that earned education good time credit.

For the analysis, KPMG required and utilized a complete offender list (all offenders regardless of whether KOMS indicated they earned education good time credit). This offender list was comprised of all state offenders including those on parole, probation, and in custody. Per the Court Order, the offender list included all offenders from January 1, 2007 to December 31, 2018 (Tranche 1), January 1, 2019 to December 31, 2019 (Tranche 2), January 1, 2020 to December 31, 2020 (Tranche 3), and January 1, 2021 to January 31, 2021 (Tranche 4). The DOC generated and provided KPMG with the list of offenders from KOMS. This included providing periodic updates to the list during the course of KPMG's review.

---

[19] *Arriola v. Commonwealth of Kentucky, et al.*, Order and Opinion, November 7, 2017.
[20] Ibid.
[21] Ibid.

KPMG identified the key fields relating to offender information that could be leveraged in KPMG's processing of completion documents and in determining whether those documents relate to eligible courses and/or offender circumstances, thus providing additional investigative context. These fields below were requested from the DOC for each offender.

| Offender Information | Relevancy to KPMG's Processing |
|---|---|
| Offender Name | Name on completion document |
| Offender Alias | Potential name on completion document |
| DOC Number | Identification number on the completion document |
| Offender ID | Unique identification number to join data sets |
| Date of Birth | Identifiable information to help differentiate between offenders |
| Social Security Number | Unique identifiable information used by providers |
| Dates in custody | Potential factor in eligibility of an award of education good time credit |
| Location(s) while in custody | Potential factor in eligibility of an award of education good time credit |
| Charge | Potential factor in eligibility of an award of education good time credit |
| Parole Date | Potential factor in eligibility of an award of education good time credit |
| Parole Revocation Date | Potential factor in eligibility of an award of education good time credit |
| Initial Classification Date | Potential factor in eligibility of an award of education good time credit |

Throughout KPMG's analysis, the offender information was referenced to help ensure completion documents were matched to the appropriate offender. Additionally, once completion documents were matched to offenders, KPMG conducted a detailed review of the offender's KOMS profile to verify the completion document was assigned to the correct offender and whether the offender was entitled to a potential award of credit under DOC guidelines.

## Course Catalog

Under the November 2017 Court Order, the requirement was given to "***indicat[e] what courses were taken***."[22] During the initial current state assessment conducted in 2019 once KPMG was appointed, it was determined that the DOC did not maintain complete records of all courses and programs offered to offenders as part of the educational good time program. As such, under the scope of the order, KPMG was to "evaluate in-scope inmate correctional education records ***to develop a list of courses taken***, EGT credits awarded, among other information."[23] Without a comprehensive course catalog available validated by DOC, KPMG would have been unable to determine which courses and/or programs were offered to offenders, at which facilities courses were offered, and how much good time credit should be received under DOC guidelines. This information is critical for KPMG to compare this information against what was awarded to offenders within KOMS in order to identify any potential Type 1 and 2 Errors.

---

[22] *Arriola v. Commonwealth of Kentucky, et al.*, Order and Opinion, November 7, 2017.
[23] Independent Consulting Services Contract between the Commonwealth of Kentucky Justice and Public Safety Cabinet Department of Corrections and KPMG LLP, October 15, 2018.

As part of our records review effort, KPMG compiled a listing of all courses and programs offered and taken by offenders during the period 2007 through 2019.[24] Source documents, which included the existing yet incomplete DOC Course Catalog, KCTCS data exports, KOMS data exports, vocational course transcripts, and other DOC program matrices, contained information of which courses were offered at which facilities during what time period. The source information provided did not determine if a course or program had been taken by an offender; the information provided only outlined that the course or program may have been offered during that time period. To organize the course, facility, and time period data in a consistent format, KPMG developed a relational data model based on the design requirements of the course catalog. The data tables were populated by extracting key information from the source document types and re-shaping data into the established data structures. This information included course name, facility name, instructor name, and course effective date, etc.

There was significant inconsistency in the source data provided, including document structure and quality, and the lack of cohesion in the naming of course titles and facilities, as well as the effective data and facility where the course was offered. Where there was ambiguity in interpreting the source documents, KPMG contacted the respective source document owners for clarification. To standardize the data, mapping tables and master lists were created for course and facility names between different source documents and provided to the DOC for validation before incorporation into the course catalog. As compiled based on a rolling basis during KPMG's ongoing analysis, DOC validated attributes such as Course Description, Eligibility Requirements, Pre-requisites, Repeat for Credit, and Duration that were not captured previously by DOC.

The resulting DOC-validated Course Catalog was provided to the Parties in February 2020 to make a final determination on the courses and programs eligible for good time credit in order for KPMG to properly indicate which courses carried credit and thereby which offenders were due credit and should be included on the Court-ordered list. The course catalog contains 245 unique names (courses/programs/activities) of which 169 are categorized as educational/vocational courses or programs. Of the 245 unique names outlined in the course catalog, 124 have been identified to have a corresponding completion document related to one or more offenders. There are 121 program names where no completion document has been identified based on the data processed to date.

In addition, depending on the Parties' decision regarding the award of credit for certain categories of documents (i.e., activities, religious, vocation, etc.), this may require a further review of KOMS to identify documents not received as part of the data collection process or additional data collection efforts. Based on agreement of the Parties at the beginning of the review process, which deemed records within KOMS to be unreliable with regard to completion documents, the analysis has focused on reviewing the source documentation collected from DOC prisons, jails, and external providers, and not a comparison of information held within KOMS to credit awarded within KOMS.

For example, should the Parties decide that activities are eligible for good time credit, additional effort may be required to review KOMS for completion documents related to activities, in addition to further outreach to DOC prisons and jails to expand the data collection request to activities. In the table below the "Summary of completion documents" was validated in conjunction with the DOC. During the validation there were 27 unique names that the DOC could not identify an associated completion document which are categorized as *Unknown*, in addition to 73 that the DOC indicated that no completion document is provided at the end of the course which are categorized as *Not Applicable*.

---

[24] In an effort to streamline course offerings, the DOC developed a course catalog for courses offered in 2020 and beyond. These documents have been provided to KPMG and utilized it in the Tranche 3 and 4 data analysis.

An overview of the DOC-validated course breakdown is provided below and the full DOC-validated course catalog is available here.

| Summary of Course Types | |
|---|---|
| Activity | 64 |
| Education | 4 |
| Program | 128 |
| Religious | 12 |
| Vocation | 37 |

| Summary of Completion Documents | |
|---|---|
| Attendance | 5 |
| Certificate | 98 |
| Diploma | 4 |
| No Completion Doc Identified | 27 |
| Not Applicable | 73 |
| Participation Certificate | 16 |
| Transcript | 22 |

| Summary of GTC Awarded | |
|---|---|
| Education Good Time | 32 |
| Program Good Time | 78 |
| Not Eligible for GTC | 135 |

| Breakdown of GTC Awarded | |
|---|---|
| 0 Good Time Credit Awarded | 135 |
| 30 Good Time Credit Awarded | 11 |
| 45 Good Time Credit Awarded | 1 |
| 60 Good Time Credit Awarded | 4 |
| 90 Good Time Credit Awarded | 94 |

As KPMG progressed the data collection and comparison phases, many courses and modules were detected among the data collected directly from the DOC prisons and jails that were not within the original source documentation used to develop the course catalog. These courses and modules were processed in an attempt to match the course name to the existing course catalog content; those that could not be mapped were provided to the DOC to conduct additional course catalog mapping validation and identify the type of course, associated completion document and education good time credit eligibility.

The breakdown of the outcomes from the DOC mapping validation is shown below alongside the related volume of related unique source documents.

| Unique Certificate, Diploma & Transcript Validation Outcomes | |
|---|---|
| Added to Course Catalog | 23 |
| Added to KCTCS Course Catalog | 2 |
| Deleted from Course Catalog | 1 |
| Maps to Existing Course Catalog Course as Award | 1 |
| Maps to Existing Course Catalog Course as Module | 24 |
| *Decision Point for Parties – Courses Not Under Purview of DOC / Courses Related to Outside Providers / Courses Requiring Further Validation** | *20* |
| *Decision Point for Parties – Does Not Map to Course Catalog** | *32* |
| **Grand Total Unique Certificate, Diploma & Transcript Validated** | **103** |

The 52 courses identified above, so denoted in italics, require further discussion by the Parties to decide if they should be added as eligible courses and programs to the course catalog and the associated good time credit. These courses fall into two categories:

— **Courses Not under Purview of DOC / Courses Related to Outside Providers / Courses Requiring Further Validation:** Following course catalog mapping validation with the DOC, these courses required Decision Points as they were classified as either a county jail program, class modules under multiple degree/diploma programs, or possible community referral courses.

— **Does Not Map to Course Catalog:** Following course catalog mapping validation with the DOC, these courses were identified by the DOC as not mapping to courses in the existing course catalog for the following reasons noted below:

| | |
|---|---|
| — Correspondence Course | — Test |
| — Instructor Credential | — Trade Program |
| — KCTCS Course | — Unknown Program |
| — Not Approved Program for Credit | — Workbook |
| — Not Approved Provider | — Workshop |

If additional information emerges, further course catalog mapping and validation by KPMG and the DOC will need to occur as well as subsequent discussion by the Parties. However, at the time of this report, no additional validation is required.

Court adjudication will be required for DP 13 and 13(a) to determine eligibility for good time credit for courses and programs within the course catalog. Note that the DOC again revised its course catalogs in 2021, with links to the latest versions listed below:

- Full Adult Institutions Catalogue - https://corrections.ky.gov/Divisions/programs/Documents/2021/AI Full Catalogue.pdf

- Full Education Catalogue - https://corrections.ky.gov/Divisions/programs/Documents/2021/Launch/EDU Full Catalogue new.pdf

- Full Community Programs Catalogue - https://corrections.ky.gov/Divisions/programs/Documents/2021/Launch/COM Full Catalogue updated.pdf

- Full Local Facilities Catalogue -  https://corrections.ky.gov/Divisions/programs/Documents/2021/LF Full Catalogue.pdf

## Source Information

The November 2017 Court Order directed KPMG to use "**all available records, databases, and sources**" in the review.[25] Additionally, the Court Order continued to state "the audit shall first collect all records and information from all existing documentation and databases, and shall solicit inmates for information only if necessary and only if all other possible sources of information have first been exhausted."[26] However, the Parties have not directed KPMG to solicit any information from inmates during the course of this review.

While KOMS was developed and maintained by DOC to be a comprehensive source of information for the education good time program, the Court previously stated that "KOMS has been shown to be an unreliable source of information."[27] As such, the Commonwealth indicated to KPMG that information in KOMS had to be supported and supplemented by external information from DOC facilities, jails, or outside providers/agencies keeping the source records.

For Tranche 1, KPMG identified 160 potential sources of information through interviews with DOC staff and site visits to Kentucky jails.

| Provider Type | Number of Providers |
|---|---|
| Jails in Kentucky | 79 |
| Prisons in Kentucky | 12 |
| Probation & Parole Districts | 21 |

---

[25] *Arriola v. Commonwealth of Kentucky, et al.*, Order and Opinion, November 7, 2017.
[26] Ibid.
[27] Ibid.

| Provider Type | Number of Providers |
|---|:---:|
| Recovery Kentucky Centers | 12 |
| Reentry Service Centers | 20 |
| Other Agencies or Providers[28] | 40 |
| **Total** | **184** |

Over the course of several weeks in May 2019, KPMG sent via email data requests to the identified providers. This data request explained KPMG's role and requested all certificates, diplomas, transcripts, or other documentation that identified program or course completion for state offenders from January 1, 2007 to January 31, 2021. Also requested were attendance records for the programs and courses and a list of the offered programs and courses. The Source Provider List details the responses KPMG received for the Tranche 1 data requests by provider.

KPMG received a myriad of documents in response to the data requests. While many providers provided the requested documentation, KPMG also received documentation outside the scope of the review including, but not limited to copies of textbooks, workbooks, photos, and blank pages. Additionally, some providers indicated they had no documents to produce as all documents were uploaded to KOMS or previously sent to the DOC and copies were not retained. As detailed in the Review Process section in this report, KPMG used these source documents to validate the education good time information in KOMS and identify potential Type 1 and 2 Errors.



---

[28] Other Agencies or Providers includes Aramark, BRRC Recycling Center, CoreCivic, Division of Education, Division of Health Services, Division of Reentry Services, Division of Substance Abuse (now Division of Addiction Services), Information Services, Kentucky Community and Technical College System, Kentucky Department of Education, Kentucky Skills U (formerly Kentucky Adult Education), National Center for Construction Education and Research (NCCER), National Occupational Competency Testing Institute (NOCTI), Noa Counseling, LLC, Kentucky Office of Employment and Training, and Kentucky DOC Ombudsman's Office.
[29] Totals completion documents processed as of July 2021.

# Review Process

The previous section addressed Data Collection, explaining the requirements from the November 2017 Court Order and thus KPMG's mandate to develop the three components of the credit database – the offender list, Course Catalog, and source information. This section continues this discussion and explains how KPMG used the three components to generate the consolidated results database – a consolidated, "comprehensive list of all class members who have taken correctional education and behavioral programming since 2007."[30] More specifically, this section explains how KPMG processed source information and subsequently compared the information within to the Course Catalog and offender list.

As depicted below, KPMG followed a five-phase review process that incorporates our proprietary artificial intelligence solution, KPMG Ignite, and a robust review process to compile our results. Each phase utilizes a mix of automated and manual steps to achieve the goals of the review per the terms of the Court Order.



## Collect

As detailed in the source information section above, KPMG obtained completion documentation from identified providers. In addition, KPMG received copies of emails to and from DOC personnel who were involved in the education good time process and local jails where DOC inmates were housed. Per consultation with DOC and the Parties, these sources were determined to have potentially relevant documentation related to KPMG's review. Documents were transmitted to KPMG in multiple formats (i.e., fax, email with PDF attachments, USB with documents, and hard copy physical documents). KPMG converted the physical documents to electronic files through scanning so that all documents were electronic as required for KPMG's analysis.



---

[30] *Arriola v. Commonwealth of Kentucky, et al.*, Order and Opinion, November 7, 2017.

A KPMG technology solution was leveraged to extract attachments from the emails and zip files. All files were saved to a staging area where unique identifiers were created to track records through the KPMG Ignite pipeline that classifies documents and extracts the information.

**Key Outcomes: Complete set of documentation received to support course and program completion**

# Classify

Using KPMG Ignite, all file types (i.e., PDFs, Word documents, email messages, etc.) were first converted into PNG files. KPMG Ignite then classified these files into various categories (i.e., certificate, diploma, transcript, and unknown) to assist in the processing in future steps.

KPMG performed a manual review of each classification category on all documents to identify documents that were misclassified and made appropriate corrections. This included a detailed review of the documents in the unknown category to determine the appropriate classification. As some documents produced were not relevant to the review (see source information section), these documents remained in the unknown category.



**Key Outcomes: 1) Detection of relevant documents, 2) organized evidence, and 3) insights for extraction process.**

# Extract

Using the classified PNG files created in the previous step, KPMG Ignite extracted key information from the files using Optical Character Recognition (OCR) technology. The information extracted was determined to be key in that it would match to the offender list – name, DOC ID number, date of birth, and social security number – and the course catalog program or course name and date of achievement. In an initial review of the documents, KPMG noted not all documents contain the same key information, but determined these fields, where present, would support KPMG's analysis. Additionally, in the initial review of multiple types of transcripts, diplomas, and certificates, KPMG identified patterns and reoccurrences that were incorporated in the extraction script. This, along with the classification in the previous step, helped to improve the efficiency of the extraction results.



The extractions results were validated through sampling and manual reviews throughout this process to help ensure information was extracted properly and complete information was extracted.

**Key Outcomes: Unstructured document data extracted into a tabular format for analysis.**

# Compare

KPMG obtained data extracts from KOMS with information related to the education good time program. KPMG extracted the same key fields identified in the extraction process (i.e., name, DOC ID number, date of birth, social security number, program or course name, and date of achievement) from the KOMS data extracts. This extracted information from KOMS was then compared to the information extracted from the source documents.

The offender identification numbers were obtained from the offender list, where possible, based on the offender information extracted. If the offender identification numbers were not readily available, KPMG manually searched the potential corresponding offenders in KOMS to confirm the identity of the offender. The extracted data was then matched to the Course Catalog based on the course catalog mappings reviewed with the DOC. Awards of credit were then investigated in KOMS to determine if completion credit was assigned appropriately, both systematically and manually, based on the Course Catalog and business rules obtained from the DOC. Using these business rules, KPMG developed various decision trees to provide the basis for the logic used by the system for comparison as well as to guide the manual review team.



**Key Outcomes: 1) Confirmed offender information and 2) identified errors in allotted completion credit.**

# Report

Upon completion of the comparison, KPMG performed several post-processing procedures to standardize and validate the results and prepare them to be loaded into the database. KPMG systematically filtered duplicate records and investigated data inconsistencies. Next, KPMG employed steps to validate the assembled credit database, from which Type 1 and 2 Errors were identified. These detailed procedures contributed to robust quality assurance.



Potential errors where offenders were not awarded credit appropriately, either Type 1 or 2 Errors, were collected into a summary report sent to the DOC for review and validation.

Once the potential error records were reviewed and validated by the DOC, they were loaded into the consolidated results database (*see* Appendix A). Additionally, KPMG compiled records documenting offender education and program completion that may be awarded credit based on further clarification by the Parties and/or adjudication by the Court (*see* Appendix D for the open Decision Points).

**Key Outcomes: 1) Report of summarized results and 2) database of records analyzed and documented outcomes**

# Appendix A – KPMG Consolidated Results Database

As specified by the court order, KPMG developed a consolidated results database that provides a comprehensive list of offenders who have taken courses, education, and programs since 2007. The database includes the offender name, offender ID, name of the course, education, or program, date completed, whether credit was awarded, and the amount of credit awarded.

**KPMG Consolidated Results Database**

For ease of reference, the consolidated results database contains the following six tabs:

1. Validated Type 2 Errors (reference Appendix B(1))

2. Record Changes for Offenders in Custody or Under Supervision (reference Appendix B(2))

3. Records for Which the DOC has Denied Credit and Deferred Review Pending Further Negotiation by Parties and/or Court Adjudication (reference Appendix C)

4. Type 1 Errors (reference Appendix D)

5. Other Records Subject in KPMG Credit Database Not Found in Appendix B(1), C(1), or C(2)

6. KOMS credit records[31]

---

[31] This is a merged table derived from merging Program Achievements with Sentence Debits Credits KOMS Tables.

# Appendix B(1) – DOC Signed Memoranda for Record

On a rolling basis, KPMG prepared lists of potential Type 1 and 2 Errors (i.e., offenders who earned, but were not awarded credit based on Kentucky law, DOC policy, and/or Decision Point agreement by the Parties) after analyzing Systems of Record and other sources of information informing offender education and program completion. The DOC and Justice and Public Safety Cabinet of the Commonwealth subsequently reviewed and validated these potential errors, signing Memoranda for Record agreeing to award education good time credit, although adding the following disclaimer to each: "Nothing in this memo and nothing related to the agreement to award these credits is an admission of liability."

**To date, the DOC has signed Memoranda for Record addressing 35 sources of information, which collectively identify 3,900 records where the Commonwealth agrees to award offenders good time credit.[32]** These Memoranda address the following Systems of Record and other sources of information:

1. National Occupational Competency Testing Institute (NOCTI) Industry Credentials & Certifications dated June 22, 2020, dated September 15, 2020, and dated December 2, 2020[33]

2. Credit voids or denials due to Prerequisites

3. Credit voids or denials due to Similar Subjects

4. CoreCivic

5. KY Department of Education (DOE) General Educational Development (GED) (i.e., High School Equivalency Diploma)[34]

6. Credit voids or denials due to GED Presentence Investigation (PSI)

7. Division of Reentry Services

8. Kentucky Bluegrass Regional Recycling Corporation (BRRC)

9. National Career Readiness Certificate (NCRC) Post-2016

10. KCTCS Associate Degrees

---

[32] *Note*: Offenders may appear on multiple lists, hence the use of the word "records."

[33] *Note*: the DOC revised its originally issued Memorandum for Record addressing NOCTI Type 2 Errors, which was signed by the Commonwealth on 6/22/20 and distributed to the Parties on 7/25/20. The DOC subsequently issued a second Memorandum, signed on 9/15/20, that subtracted seven offenders from the list. These offenders were added to Decision Point 13 for subsequent reconsideration and resolution by the Parties. The context and history of this issue are discussed in more detail in Appendix D under Decision Point 1.

[34] KPMG also issued a Memorandum for Record related to credit for GED completion, documenting two offenders who will be considered for credit pending Decision Point 14, which addresses delayed release. The context and history of these and other factors affecting Decision Points are discussed in more detail in Appendix D.

11. KCTCS Diplomas

12. Substance Abuse Program (SAP)

13. National Center for Construction Education and Research (NCCER)

14. NCRC SoR

15. KCTCS Tranche 2

16. Volunteers of America (VOA) SAP

17. VT Fundamentals[35]

18. Tranche 1 Group 1

19. Tranche 1 Group 2

20. NOA

21. Tranche 1 Group 1 – Additional Records

22. Tranche 2 NCCER

23. Tranche 2 System of Record

24. Tranche 2 OCR

25. Course Catalog to Program Achievements Analysis

26. Tranche 3 Group 1 System of Record

27. Tranche 3 Group 1 OCR

28. Classification

29. Tranche 3 Group 2 SoR

30. Tranche 3 Group 2 OCR

31. Tranche 3 OCR Additional Records

32. Tranche 3 NCCER Additional Records

33. Tranche 4 Group 1 System of Record

34. Tranche 4 Group 1 OCR

35. Reconsideration per Litigation

Lists of offenders contained within these DOC-issued Memoranda for Record are organized into 3 groups:

1. Offenders who should be awarded credit on their sentence, however credit could not be applied as the offender is no longer under DOC custody/supervision or is on a subsequent period of incarceration/supervision for which credit cannot be applied

2. Offenders who are/were still on the same commitment during which they earned credit and the DOC updated their record accordingly

---

[35] In accordance with Decision Point 3(a), the Parties agreed to ensure all offenders who completed VoTech requiring VT Fundamentals (after October 1, 2012) but did not receive 90-days of credit for VT Fundamentals to the Type 2 list.

3.   Offenders who are, as indicated by DOC records, deceased, but nonetheless would have been eligible to receive credit applied to their sentence

Please note, however, that KPMG found errors in these groupings and the DOC did not award credit to a number of inmates, despite stating so on these Memorandums for Record. Additionally, please reference the "Appendix B(1)" Tab in the consolidated results database (Appendix A) for the list of records that the Commonwealth has proceeded to award education good time credit.

# Appendix B(2) – Record Changes for Offenders in Custody or Under Supervision

As requested by the Parties and due to the impacts of the COVID-19 pandemic in correctional settings, KPMG provided interim results of KPMG's analysis on a rolling basis for validation by the DOC. As of September 10, 2021, DOC has validated and updated to the records of 1,650 offenders based on KPMG's analysis.

Note: this project required extensive interviews, record collection, and data analysis. Our team anticipated collaboration and validation efforts by the DOC and Parties would be required to bring suspected matters to resolution

The DOC tracks records changes in KOMS using the tag "Reconsideration per Litigation."

Please reference the "Appendix B(2)" Tab in the consolidated results database (reference Appendix A) for the list of record changes.

# Appendix C – Potential Type 2 Errors - Records for Which the DOC has Denied Credit and Deferred Review Pending Further Consideration by Parties and/or Court Adjudication

The table below provides a breakout of potential Type 2 errors for Decision Points that are unresolved and resolved-in-principle-but-not-application:[36]

| Decision Point Description | Type 2 Errors |
|---|---|
| DP 1: Offenders who completed the NOCTI Workplace Readiness program | 7 |
| DP 3(a): Offenders enrolled in VT Fundamentals prior to October 2012 but completed after October 2012 | 64 |
| DP 4: Offenders denied credit due to lack of attendance records | 31 |
| DP 8(c): Offenders who completed the VOA Halfway Back program and received either 45 or 90 days of credit | 77 |
| DP 11(a): Offenders who completed NCRC and did not receive credit but are currently enrolled in a Vocational Technical (VoTech) program | 40 |
| DP 11(a): Offenders who completed NCRC and did not receive credit but the DOC asked to defer their confirmation of these as Type 2 errors | 13 |
| DP 12(a) and (b): KCTCS Certifications and Certificates | 7,253 |
| DP 13: Courses in the course catalog that the DOC denies are eligible for credit (e.g., Malachi Dads) | 1,883 |
| DP 13(a):  Offenders who did not receive credit due to a course being deemed ineligible for programs completed but not mapped to the Course Catalog (filter on Appendix A based on course name) | 2,388 |

---

[36] *See* Appendix D for a discussion of all the Decision Points.

| Decision Point Description | Type 2 Errors |
|---|---|
| DP 14: Offenders whose release was delayed due to the processing time of sentence credits | 11 |
| DP 17: Offenders who were denied credit due to completing a course at an unapproved location | 582 |
| DP 18:  Offenders with conflicting completion documentation[37] | 41 |
| DP 19:  Sex Offender potential Type 2s who have not yet completed the Sex Offender Treatment Program (SOTP) but are still in prison (suspended credits)[38] | 24 |
| DP 20:  NOA treatment summaries indicating completion but DOC "requirements" not met | 15 |
| **Total** | **12,429** |

A list of these defenders is included in the Appendix C tab in the Excel spreadsheet.

---

[37] These are records where, for example, KPMG collected completion documents from facilities and/or providers but the DOC has information to suggest the offender may not have finished the program. *See* Appendix D.
[38] These records would be potential Type 2 Errors if/when these offenders complete SOTP.

# Appendix D - Status of Decision Points

To facilitate discussion between the Parties and to help focus, prioritize, and expedite KPMG's review efforts, KPMG and DOC identified seventeen Decision Points (DP) for clarification by the Parties, some of which remain unresolved or where agreement by the Parties was obtained in principle but not application (i.e., applying agreements, where applicable, to an individual offender's situation/context). The table below provides a summary, to include indicating the status of each:

| DP Number | Decision Point Title & Description | Status |
|---|---|---|
| 1 | Allow passing score on certification "exit exams" (e.g., NOCTI) to evidence program/certification completion? | Resolved in Principle but Not in Application |
| 2 | Agree to use accredited national vocational certification board criterion-reference cut scores to determine passing exit exams? | Resolved |
| 3 | Award EGT credit regardless of TABE, GED, and VT Fundamental prerequisites? | Resolved |
| 3(a) | If an offender received credit for VoTech, can KPMG assume he/she should receive VT Fundamentals credit per DOC policy? | Resolved in Principle but Not in Application |
| 4 | How do the Parties want to address time requirements? | Resolved in Principle but Not in Application |
| 5 | Allow EGT credit for similar subjects? | Resolved |
| 6 | What is the Court's guidance regarding inmates who earned GED but had their credit voided due to unverified pre-sentence investigation (PSI) statements about their education history? | Resolved |
| 7 | Award EGT credit for multiple Substance Abuse Program (SAP) completions per current DOC policy? | Resolved |
| 7a | Can an offender earn credit for multiple SAP completions if completions were earned on different commitments prior to September 1, 2018? | Resolved |
| 8(a) | Is it allowable for the DOC to disallow credit for county SAP programs? | Resolved |
| 8(b) | Was it allowable for the DOC to award less than 90 days for SAP (2011-2014)? | Resolved |
| 8(c) | Is the award for Volunteers of America (VOA) SAP 45 or 90 days of credit? | Unresolved |
| 9 | How, if at all, do the Parties want to assess and address "mentally retarded" and "intellectually disabled" sex offenders?[39] | Unresolved |
| 10 | Will Type 2 offenders (i.e., those who earned EGT but were not awarded credit) and were discharged but returned to prison be awarded EGT credit to reduce their new commitment(s)?  What does the law allow? | Resolved |
| 11(a) | What is the guidance regarding the denial of NCRC credit based on inmate location (i.e., where he/she is housed)? Does it earn 30 or 90 days credit? | Resolved in Principle but Not in Application |
| 11(b) | Is credit awarded for NCRC completion prior to 2016? | Resolved |

---

[39] Quote per KRS 197.045.

| DP Number | Decision Point Title & Description | Status |
|-----------|-----------------------------------|--------|
| 11(c) | Is credit awarded for NCRC earned at non-jail and prison facilities (e.g., Reentry Service Centers, Probation & Parole Districts, etc.)? | Resolved |
| 12(a) | Award EGT credit for the KCTCS certificate program? | Unresolved |
| 12(b) | If the word "certification" is required, then do we need to also evaluate KCTCS general education certifications and category certifications? | Unresolved |
| 13 | Which programs within the course catalog should have earned credit (retrospective)? Which programs will earn credit (prospective)? And how much? | Unresolved |
| 13(a) | For subsequent programs, activities, courses, etc. identified post-previous course catalog iterations, what should receive credit? | Unresolved |
| 14 | How many days, if any, are allowable for delayed releases? Are different processing times acceptable for different programs and education? | Resolved in Principle but Not in Application |
| 15 | How do the Parties want to treat deceased offenders? | Resolved |
| 16 | Can an offender earn credit for programs or education completed twice during the same commitment? | Unresolved |
| 17 | Should credit be awarded for completion of an approved program or education at an "unapproved" location? | Unresolved |
| 18 | Offenders with conflicting completion documentation | Unresolved |
| 19 | Sex Offender potential Type 2s who have not yet completed the Sex Offender Treatment Program (SOTP) but are still in prison (suspended credits) | Unresolved |
| 20 | NOA treatment summaries indicating completion but DOC "requirements" not met | Unresolved |

## Decision Point 1

**Allow passing score on certification "exit exams" (e.g., NOCTI) to evidence program/certification completion?**

This Decision Point has been resolved in principle but not in application. There was agreement by all parties that the passing score on "exit" would mean the offender receives credit. However, the DOC subsequently issued a revised Memorandum for Record, signed on September 5, 2020, that removed seven offenders from the list who completed Workforce Readiness. The revised Memorandum incorrectly explains, "[These 7 offenders] completed NCRC not NOCTI and are not eligible under [Decision Point 1]."

KPMG provided the Commonwealth with additional information documenting how those offenders had in fact completed NOCTI, not NCRC. NOCTI's Workforce Readiness is an industry-based credential that covers:

— Communication

— Problem Solving and Critical Thinking

— Information Technology Applications

— Technology Systems

— Safety, Health, and Environment

— Leadership and Teamwork

— Ethics and/or Legal Responsibilities

— Employability and/or Career Development

A summary of the credential is available at:
https://www.nocti.org/wp-content/uploads/2020/09/EmpWorkplaceRead3033.pdf.

Following the clarification, the DOC completed further research, reporting the following based on the memory of an employee, "There is limited history. It is not NCRC, it is however a standalone exam by NOCTI. This is not a course, therefore, should not receive any credit."

The DOC rescinded their previous two Memoranda for Record and submitted a third dated December 2, 2020 that excludes the seven offenders who completed Workplace Readiness.

The DOC disagrees that Workforce Readiness falls under this decision point and may be better suited under Decision Point 13(a). Nevertheless, we included it here as the Parties have a disagreement over whether or not these offenders should receive credit.

# Decision Point 2

**Agree to use accredited national vocational certification board criterion-reference cut scores to determine passing exit exams?**

This Decision Point has been resolved. Agreement by all Parties that the cut scores should be used to determine passing criteria and not the DOC required 70 percent passing criteria, confirmation of application retrospectively and prospectively.

This Decision Point was used to derive the NOCTI list of offenders contained in Appendix B(1) (see discussion for Decision Point 1).

# Decision Point 3

**Award EGT credit regardless of TABE, GED, and VT Fundamental prerequisites?**

This Decision Point has been resolved. Agreement by all Parties that credit should be given to an offender if they have passed and completed a course regardless of pre-requisites that may have been in place.

The DOC agreed to award credit to offenders who completed programs prior to being classified.

# Decision Point 3(a)

**If an offender received credit for VoTech, can KPMG assume he/she should receive VT Fundamentals credit per DOC policy?**

This Decision Point has been resolved in principle but not application. Originally, the Parties agreed to award credit. However, the DOC later added the "business rule" that would only apply for offenders who were enrolled in VT Fundamentals after October 1, 2012 but did not receive 90-days of credit for VT Fundamentals on the same commitment. Note: other agreements by the Parties were contingent on completion date, not enrollment date.

# Decision Point 4

**How do the Parties want to address time requirements?**

This Decision Point has been resolved in principle but not application. Agreement by all parties that time requirements will not be imposed, and credit will be given to those offenders who were allowed to take and complete a course.

Example:

— Offender A completed the Inside Out Dads program in April 2018 but was denied credit.  For these records, the DOC disputed, could not find, or did not retain a record of his program attendance.



Another example includes Offender B, who completed the Substance Abuse Program on 11/27/2019.  KPMG collected a completion certificate signed by both the Program Director and Counselor of the Correctional Facility, but the DOC staff challenged that completion, saying "[Offender B] did not have time to complete the programming requirements. Client did not complete 6-month program criteria for completion."  The staff indicated offenders are sometimes provided completion certificates despite not satisfying DOC completion criteria for the purpose of obtaining benefits.  Additionally, the staff indicated that some Correctional Facilities fill out and sign the completion certificates before graduation.

When the parties first discussed this and came to an agreement, the examples were specific to vocational programs. The question remains whether behavioral modification programs, to include the example below, falls under this agreement and whether those offenders receive credit.



## Decision Point 5

**Allow EGT credit for similar subjects?**

This Decision Point has been resolved. The Commonwealth agreed to grant credit for similar subjects but noted that they felt they were not liable for payment of damages for program good time credit for the period 2010 to 2013. Plaintiffs' counsel took it on advisement.

This Decision Point principally affects those offenders appearing on the Similar Subjects Memorandum for Record in Appendix B(1).

## Decision Point 6

**What is the Court's guidance regarding offenders who earned GED but had their credit voided due to unverified pre-sentence investigation (PSI) statements about their education history?**

This Decision Point has been resolved. Agreement by all parties that if an offender was allowed to take a course, not just GED, and subsequently completed the course then the offender should receive credit, regardless of the PSI statements on record.

This Decision Point principally affects those offenders appearing on the GED PSI Memorandum for Record in Appendix B(1).

## Decision Point 7

**Award EGT credit for multiple Substance Abuse Program (SAP) completions per current DOC policy?**

This Decision Point has been resolved. Agreement by all parties that an offender who took an identical SAP program while under the same period of incarceration should not be awarded education good time credit until September 1, 2018. For the period, post-September 1, 2018, an offender may receive multiple credits for SAP completion for those periods when incarcerated and on supervision.

This Decision Point principally affects those offenders appearing on the SAP and VOA potential eligibility lists in Appendix C(2).

## Decision Point 7(a)

**Can an offender earn credit for multiple SAP completions if completions were earned on different commitments prior to September 1, 2018?**

This Decision Point was initially resolved.  Agreement by all parties that, prior to September 1, 2018, if an offender completed a SAP program under a different period of incarceration, then the offender should be able to earn credit for multiple SAP completions.  However, further conflicting guidance was provided (see DP 16).

This Decision Point principally affects those offenders appearing on the SAP and VOA potential eligibility lists in Appendix C(2).

## Decision Point 8(a)

**Is it allowable for the DOC to disallow credit for county SAP programs?**

This Decision Point has been resolved. The Commonwealth declared and confirmed that no state offender has participated in a county SAP program.

## Decision Point 8(b)

**Was the DOC allowed to award less than 90 days (2011-2014)?**

This Decision Point has been resolved. The Commonwealth noted that in 2010, the statute was changed to award 90 days education good time credit for SAP completion. Prior to that statutory change, no education good time credit was awarded for drug treatment programs, only education.

## Decision Point 8(c)

**Is the award for Volunteers of America (VOA) SAP 45 or 90 days of credit?)?**

This Decision Point remains unresolved as the Parties disagree over the amount of credit to award VOA SAP completions.

KPMG identified offenders who were awarded either 45 or 90 days of credit for completing VOA SAP. According to VOA, these offenders completed the Halfway Back program, however, the number of credit days awarded appears to be inconsistently awarded. The course catalog indicates that 45 days should be awarded for the completion of the Halfway Back program, but some offenders have received 90 days. Given this, some of these records may be Type 1 errors, if only 45 days should have been credited, or some may be Type 2 errors if 90 days should have been awarded.

Please see Appendix C(2) for a list of the offenders affected.

## Decision Point 9

**How, if at all, do the Parties want to assess and address "mentally retarded" and "intellectually disabled" sex offenders?**

This Decision Point remains unresolved and requires further discussion between the Parties and Judge Gambill. There was agreement by all parties that those offenders convicted prior to July 15, 1998, or those deemed "mentally retarded" or "intellectually disabled," can earn and be awarded credit without completion of the Sex Offender Treatment Program (SOTP). Prospective criteria will be developed by the DOC to assess and identify those offenders who are "intellectually disabled". Retrospectively, the Commonwealth asserts that is no method for the DOC to contact or assess those offenders who are "intellectually disabled," and therefore the onus should be on the offender to establish their eligibility.

In accordance with KRS 197.045 and by agreement among the Parties, sex offenders who are "mentally retarded" or "intellectually disabled" can receive credit without completing the SOTP. Accordingly, this Decision Point has the potential to impact a significant number of offenders. These offenders would be eligible for an immediate award of education good time credit rather than having their credit suspended until completion of the SOTP.

Given the DOC's previous practice of not defining, identifying, or tracking this population, KPMG is currently unable to produce a list of offenders who are affected by this Decision Point. Offender records will have to be re-examined once criteria for inclusion and eligibility are determined.

## Decision Point 10

**Will Type 2 offenders (i.e., those who earned EGT but were not awarded credit) and were discharged but returned to prison be awarded EGT credit to reduce their new commitment(s)? What does the law allow?**

This Decision Point has been resolved. Agreement by all parties that previously earned education good time credit cannot be applied against a new commitment. Parole violations are classed as the original commitment and therefore education good time credit could be awarded against the current sentence

This Decision Point affected all offenders who returned to prison and/or supervision on new commitments.

## Decision Point 11(a)

**What is the guidance regarding the denial of NCRC credit based on offender location (i.e., where he/she is housed)? Does it earn 30 or 90 days credit?**

Agreement by all parties that NCRC should not be awarded 90 days credit as it is not an educational course. Per the DOC, NCRC is a test that offenders take to assess their eligibility for an educational program, i.e., an entrance test. There is no coursework or instruction provided and therefore it is classed as a program. VoTech is an educational course that is not offered in jails, only in prisons, and NCRC is the test that offenders must take to assess if they can go on to complete a VoTech course. As VoTech courses are not offered in jails, a policy decision was made by DOC that NCRC could be offered in jails and would be awarded 30 days program good time credit. Offenders in prison receive credit for NCRC through the completion of the VoTech course, which is awarded 90 days educational good time credit. However, it was agreed by all parties that those offenders who take NCRC in prison and do not go on to complete a VoTech course should be eligible for 30 days program good time credit retrospectively.

The DOC has updated the records of those offenders in the NCRC Memorandum for Record in Appendix B(1) who are still in custody or under supervision on the same commitment.

As indicated in the "Breakout of Records for which the DOC has Denied Credit and Deferred Review Pending Further Negotiation and/or Court Adjudication" section, the DOC has not awarded credit for inmates who have completed NCRC but are currently enrolled in a VoTech program.  These inmates would be eligible for immediate 30 days of credit if they dropped out of the VoTech program.  If they continue to graduation, then they will be awarded 90 days of credit.  KPMG recommended the DOC inform the inmates of this and closely monitor their release dates.  Additionally, there were offenders who completed NCRC and did not receive credit but the DOC asked to defer their confirmation of these as Type 2 errors.

In addition to the offenders affected above, there were additional offenders that the DOC asked to defer their confirmation of these as Type 2 errors.

## Decision Point 11(b)

**Is credit awarded for NCRC completion prior to 2016?**

This Decision Point has been resolved. Agreement by all parties that credit will be awarded for NCRC completion prior to 2016 for offenders in jails and on parole.

## Decision Point 11(c)

**Is credit awarded for NCRC earned at non-jail and prison facilities (e.g., Reentry Service Centers, Probation & Parole Districts, etc.)?**

This Decision Point has been resolved. Agreement by all parties that NCRC credit will be awarded for offenders in jails and on parole.

This Decision Point affects those offenders appearing on the NCRC list in Appendix B(1).

## Decision Point 12(a)

**Award EGT credit for the KCTCS certificate program?**

This Decision Point remains unresolved. The KCTCS Course Catalogue 2007-2010 states, "KCTCS Certificate and Diploma level credits were the only achievable Vocational/Technical achievement awarded within DOC Adult Institutions, 2007-2010." Additionally, the word "Certification" appears in Kentucky Revised Statutes (KRS) 197.045. And, several court cases also address the issue. In *Martin v. Chandler* the Court ruled "the award of educational good time credit under KRS 197.045(1) has been found to have been mandatory."[40] The Court in *Roberts v. Thompson* concluded "…the Department may no longer decide whether to award EGT credit for additional diplomas, degrees, or

---

[40] *Martin v. Chandler*, 122 S.W.3d 540, 551 (Ky. 2003).

certifications, but is required to do so."[41] *Note*: KPMG does not offer a legal opinion whether KCTCS Certificates and Certifications earn credit.

Please see Appendix C(2) for a list of the offenders affected.

## Decision Point 12(b)

**If the word "certification" is required, then do we need to also evaluate KCTCS general education certifications and category certifications?**

This Decision Point remains unresolved and court adjudication.  See above discussion in the DP 12(a) section.

Please see Appendix C(2) for a list of the offenders affected.

## Decision Point 13

**Which programs within the course catalog should have earned credit (retrospective)? Which programs will earn credit (prospective)? And how much?**

This Decision Point remains unresolved and requires Court adjudication.

The link below provides an overview of each of the 245 courses, programs, and activities listed in the existing course catalog and the number of offenders that have been identified as having an associated completion document.

## Decision Point 13(a)

**For subsequent programs, activities, courses, etc. identified post-previous course catalog iterations, what should receive credit?**

This Decision Point remains unresolved and may require Court adjudication.

To date the data collection has identified 52 additional unique course and program names that require further validation by the Parties to determine their eligibility for good time credit based on the response received from the DOC during the mapping validation exercise. These courses and programs, alongside the number of offenders identified to date, are listed at the link below:

DOC Reviewed Unmapped Course List

There was insufficient documentation of changing DOC "business rules" and definitions such as what constituted a religious program versus a credit-awarding behavioral or life skills program.[42]

## Decision Point 14

**How many days, if any, are allowable for delayed releases? Are different processing times acceptable for different programs and education?**

This Decision Point has been resolved in principle but not necessarily in application. KPMG will list offenders whose records do not show they received education good time credit as Type 2 Errors and note if their release was delayed. KPMG will filter and not include offenders who may have had delayed releases, regardless of the delay period, if KOMS shows credit was awarded accurately.

The DOC has no written standards for acceptable processing times and inmate releases have been delayed upwards of months after credit earned.

---

[41] *Roberts v. Thompson*, 388 S.W.3d 519, 520 (Ky. App. 2012).
[42] The DOC now defines a religious program as "a program that does not have a secular purpose or a program which has a curriculum that advances or inhibits specific religion(s)."  It now gives credit for Financial Peace, which has

# Decision Point 15

**How do the Parties want to treat deceased offenders?**

This Decision Point has been resolved. Agreement by all parties that deceased offenders are included on KPMG's lists.  Where known, that they annotated as deceased.

This Decision Point affects all deceased offenders, regardless of the education or program completed. The DOC agreed to retain on Type 2 Error lists those offenders it has records or knowledge of their death on each Memorandum for Record. See Appendix B(1).

# Decision Point 16

**Can an offender earn credit for programs or education completed twice during the same commitment?**

This Decision Point was initially resolved by agreement to allow multiple credits. However, the Parties reconsidered after discussing DP 7, allowing multiple SAP credits during the same commitment.  However, the Parties subsequently readdressed again, changing their guidance.  Plaintiffs' counsel relented: if an offender took the same course or program multiple times during the same commitment, that offender is not entitled to multiple credits.  However, Defendants' counsel alerted KPMG that they are evaluating legal precedent and will notify the Parties and KPMG if it can agree to Plaintiffs' counsel proposed resolution.  Accordingly, this Decision Point remains unresolved and is pending further guidance from the Parties.

# Decision Point 17

**Should credit be awarded for completion of an approved program or education at an "unapproved" location?**

This Decision Point remains unresolved and is pending further analysis. KPMG will continue to track all completions of approved programs in the list of offenders, regardless of location.

Please see Appendix C for a list of the offenders affected.  The DOC requested KPMG attempt to filter offenders who took approved programs at "unapproved" locations.  After collecting a variety of data from the DOC, our team attempted to compile a timeline for each program at each location.  However, this was not possible due to the following reasons:

1. **Incomplete records across different sources**

   The DOC has provided 3 sources of information to identify the approval date ranges for certain courses and locations: Excel Matrix of Jail approval log, Course Catalog, and Word Matrices dating from 2013-2020. All of these sources have missing and incomplete information.

2. **Conflicting approval ranges between sources**

   There are many conflicting date ranges when comparing approval ranges between sources.

3. **Incomplete collection of programs and locations**

   Not all programs and locations are included in the documentation for course approval.

4. **Missing Word document matrices prior to 2013**

   The matrices provided by the DOC in Word documents do not contain approval ranges prior to 2013, so it is unknown when certain courses are first approved for credit at given locations.

5. **Inconsistent application of awarding credit**

   Some offenders receive credit at unapproved locations, while other offenders are denied credit.

6. **Very few jails/prisons had an updated approval matrix**

   Indeed, during our field investigations, prisons and jails were either unaware there was a master approval matrix or had an out-of-date matrix.  Furthermore, we found no evidence to suggest this information was provided to

inmates so they could make informed decision as to which programs would or would not give them credit.  At one facility, we noted completion documents stacking up on an officer's desk, which they planned to submit after gaining approval from the DOC.  They relayed that the approval process was not enforced and sometimes backdated.  Plus, the facilities were not aware of any central repository that contained a master-approved list. The DOC did not maintain sufficient historical records, if they existed.

## Decision Point 18

**Offenders with conflicting completion documentation**

During the review with the DOC, KPMG noted five offenders where a completion document had been received, but the DOC had other documentation indicating that these offenders did not complete the course. These offenders are outlined below.

Example 1:

— Offender C completed SAP in January 2019, but no credit was awarded. DOC feedback indicated that he withdrew from a SAP program in January 2019.



Example 2:

— Offender D completed SAP in March 2019, but no credit was awarded. DOC feedback indicated that he withdrew from a SAP program in February 2019.



Example 3:

— Offender E completed Portal New Directions in July 2018, but no credit was awarded. The DOC indicated that Portal New Directions credit was granted in July 2016; however, this credit was awarded on a separate commitment. There is no reference in KOMS indicating the offender ever enrolled in or completed this program – no program referral, no attendance records entered, no program achievement, no other supporting documentation. Nonetheless, KPMG received the completion certificate below.

## PORTAL New Direction Certificate

#255132

For successful completion of the ReEntry Program

### Presented this 6th. day of July, 2018.

**Three Forks Regional Jail**
Department of Corrections

Richard Willoughby BS,T-CADC
Reentry Facilitator

Change lives
to break the
cycle of crime

Harvey Pelfrey
Jail Administrator

Example 4:

— Offender F completed Inside Out Dads in November 2016, but no credit was awarded. The DOC indicated that the IOD coordinator indicated that the offender did not complete the course.



**Example 5:**

— Offender G completed SAP in June 2018, but no credit was awarded. The DOC indicated that several certificates received from Diersen Therapeutic Community were sent to KPMG but those inmates did not successful complete those program.  These certificates may have been issued in error or by design (e.g., the DOC relayed that sometimes completion certificates are issues just to show participation and obtain eligibility for food stamp benefits).



## Decision Point 19

**Sex Offender potential Type 2s who have not yet completed the Sex Offender Treatment Program but are still in prison (suspended credits)**

This category of inmates represents sex offenders who completed a program that is ordinarily due credit but no record of completion was input into KOMS.  These are suspended credits, pending completion of SOTP.

## Decision Point 20

**NOA treatment summaries indicating completion but DOC "requirements" not met**

KPMG received several treatment summary documents from NOA Counseling. These treatment summaries are typically notes from the program instructors on various offenders documenting their progress. Some treatment summaries appear to indicate that an offender has completed or graduated from a program. Based on this information, KPMG would look for a corresponding sentence credit in KOMS, if the treatment summary indicated completion. However, these offenders did not have a completion certificate in KOMS.

## Contact

**Bill Zizic**
**Managing Director**
**Government & Infrastructure**
Justice & Public Safety
312-259-2869
wzizic@kpmg.com

**Lawrence Spinetta**
**Director**
**Government & Infrastructure**
Justice & Public Safety
737-999-1918
lspinetta@kpmg.com



**kpmg.com/socialmedia**

© 2021 KPMG LLP, a Delaware limited liability partnership and a member firm of the KPMG global organization of independent member firms affiliated with KPMG International Limited, a private English company limited by guarantee. All rights reserved. NDP159782-1A

The KPMG name and logo are trademarks used under license by the independent member firms of the KPMG global organization.