UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | |
|---|---|
| KEATH BRAMBLETT, *et al.*, | ) |
| | ) Civ. No. 3:17-cv-00100-GFVT |
| Plaintiffs, | ) |
| | ) |
| V. | ) **MEMORANDUM OPINION** |
| | ) **&** |
| COMMONWEALTH OF KENTUCKY, *et al.*, | ) **ORDER** |
| | ) |
| Defendants. | ) |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Kentucky offers its prisoners sentence reductions in exchange for becoming educated. *See* KRS § 197.045.  But Plaintiffs, a class of previously and currently incarcerated persons, allege that Kentucky did not uphold its end of the exchange and incompetently managed its system of rewarding educational good time credits.  To rectify this mismanagement, the class sued the Commonwealth and multiple defendants in their individual capacities and seek monetary, injunctive, and declaratory remedies.  Before the Court now are cross-Motions for Summary Judgment related to Plaintiffs' claims made pursuant to 42 U.S.C. § 1983.  [R. 171; R. 209.]  Because qualified immunity shields the individual defendants from liability, the Court will **GRANT** Defendants' Motion [R. 171] and **DENY** Plaintiffs' Motion [R. 209.]

**I**

In September 2012, a group of inmates incarcerated in Kentucky Department of Corrections facilities alleged that they had been improperly denied educational good time credits for having completed educational or behavior modification programs.  [R. 222 at 2.]  Ten years have now passed since the inception of this litigation, during which time Plaintiffs have amended

their Complaint eight times, attained class certification, removed named plaintiffs, added named plaintiffs, and conducted massive discovery.[1]  [R. 171-1 at 2-4.]  Moreover, by Court order, KDOC's records were subjected to an extensive audit which led to the discovery of an "abysmally managed" system of state recordkeeping, uncovered the existence of thousands of inmates who were either facing potential overincarceration or had already been overincarcerated by the Commonwealth, and cost Kentucky taxpayers over twenty million dollars.  [R. 51; R. 225; *see* R. 195 at 87.]  Because of this litigation, KDOC has issued an official course catalog, has granted credit to many class members, and has overhauled portions of its inadequate processes.  [*See* R. 157; R. 195 at 79; R. 230.]  Additionally, since the inception of this litigation, various original plaintiffs have served their sentences and been released from incarceration.  [*See* R. 230 at 3 (noting the in-person presence of Plaintiff Bramblett)].

Now, a decade having passed, Parties have finally reached the summary judgment stage.  In their Motion, Defendants first contend that individual defendants Brown, Tilley, Thompson, Ballard, Erwin, and Slemp are not subject to Section 1983 liability under a theory of supervisory liability.  [R. 171-1 at 6-9, 25-27.]  Second, Defendants contend that qualified immunity shields all individual defendants from direct Section 1983 liability.  [*See generally* R. 171-1; R. 213.]  In opposition, Plaintiffs argue that qualified immunity is precluded under either theory of Section 1983 liability because the actions, or lack thereof, of KDOC and its employees systemically caused Plaintiffs' constitutional violations.  [*See* R. 209 at 9-14.]  Further, because of Defendants' collective disorganization and mismanagement, Plaintiffs ask the Court to retroactively award "all class members 90 day [educational good time credits] for all courses

---

[1] For examples of these efforts, *see* [R. 1-2; R. 6; R. 122; R. 146; R. 198-2; R. 222.]

they completed" and to also grant summary judgment on their state law claims. [R. 209 at 33-34; R. 217 at 5.]

**II**

Summary judgment is appropriate when the pleadings, discovery materials, and other documents in the record show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986). "A genuine dispute exists on a material fact, and thus summary judgment is improper, if the evidence shows 'that a reasonable jury could return a verdict for the nonmoving party.'" *Olinger v. Corp. of the Pres. of the Church*, 521 F. Supp. 2d 577, 582 (E.D. Ky. 2007) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). The moving party has the initial burden of demonstrating the basis for its motion and identifying those parts of the record that establish the absence of a genuine issue of material fact. *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir. 2002). The movant may satisfy its burden by showing "that there is an absence of evidence to support the non-moving party's case." *Celotex Corp.*, 477 U.S. at 325. Once the movant has satisfied this burden, the non-moving party must go beyond the pleadings and come forward with specific facts demonstrating there is a genuine issue in dispute. *Hall Holding*, 285 F.3d at 424 (citing *Celotex Corp.*, 477 U.S. at 324).

The Court must then determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1310 (6th Cir. 1989) (quoting *Anderson*, 477 U.S. at 251-52). In doing so, the Court must review the facts and draw all reasonable inferences in favor of the non-moving party. *Logan v. Denny's, Inc.*, 259 F.3d 558, 566 (6th Cir. 2001). Summary judgment is inappropriate where there is a genuine

conflict "in the evidence, with affirmative support on both sides, and where the question is which witness to believe." *Dawson v. Dorman*, 528 F. App'x 450, 452 (6th Cir. 2013).

In their Eighth Amended Complaint, Plaintiffs allege that "[b]ecause the individual Defendants are state actors engaged in misconduct that violates Plaintiffs' 14th Amendment rights, Plaintiffs are entitled to […] relief and damages […] pursuant to 42 U.S.C. § 1983." [R. 222 at 10.] Though Plaintiffs do not specify a theory of Section 1983 liability under which they pursue their claims, Defendants surmise pursuit under supervisory and direct liability theories and argue that they are shielded by qualified immunity. Though Plaintiffs do not counter otherwise, they contend that they are entitled to summary judgment because the scope of Defendants' mismanagement precludes qualified immunity. [*See* R. 171-1 at 6, 8; R. 209 at 5; *Payne v. Sevier Cnty.*, 2016 U.S. Dist. LEXIS 15983 at *17 ("Plaintiff articulates two theories of § 1983 liability […] direct and supervisory") (*aff'd by Payne v. Sevier Cnty.*, 681 Fed. App'x 443 (6th Cir. 2017)).]. Accordingly, the Court will analyze whether summary judgment is appropriate under either a supervisory or direct theory of Section 1983 liability.

### A

The Court turns first to Plaintiffs' Section 1983 supervisory liability claim against individual defendants Brown, Tilley, Thompson, Ballard, Erwin, Slemp, Noble, White, and Crews.[2] In their Eighth Amended Complaint, Plaintiffs assert that (1) Defendants Brown, Tilley, Noble, and Crews "were responsible for the training and supervision of employees of [the

---

[2] The Court notes that Plaintiffs' Eighth Amended Complaint added individual defendants Mary Noble, Cookie Crews, Randy White, and Ravonne Sims. [R. 222.] Because Defendants' Motion for Summary Judgment was filed prior to the filing of the Eighth Amended Complaint, however, their Motion does not reference the later-added defendants. Nonetheless, because Plaintiffs' Motion for Summary Judgment includes an analysis of their claims against the newly added Defendants, and because the Court will rule in favor of Defendants notwithstanding their precursory briefing, Plaintiffs' claims against Noble, Crews, White, and Sims are also governed by this Order.

4

Kentucky Justice and Public Safety Cabinet and the KDOC]," (2) Defendants Thompson, Ballard, Erwin, and Crews were […] responsible for the training and supervision of employees of KDOC," (3) Defendants Erwin and White were "responsible for the training and supervision of employees of the KDOC's Education Branch," and (4) Defendant Slemp was Defendant Cropp's supervisor. [R. 222 at 4.]

In support of summary judgment, Defendants contend that "Plaintiffs have not demonstrated that these Defendants took any deliberate action or were otherwise involved in any acts that deprived the named Plaintiffs of any sentence credits," and, as such, "Plaintiffs have only alleged that these Defendants failed to act, which is insufficient to support a supervisory-liability claim." [R. 171-1 at 7 (citing *Gregory v. City of Louisville*, 444 F.3d 725, 751 (6th Cir. 2006)).]. In opposition, Plaintiffs do not specifically address whether any individual Defendant is liable under a theory of supervisory liability. Instead, Plaintiffs focus on the issue of direct Section 1983 liability and argue that Defendants' "abysmal" management of its system of awarding educational good time credits establishes a genuine issue of material fact and precludes summary judgment. [*See* R. 209 at 2-6.]

Upon review, the Court finds summary judgment appropriate in favor of Defendants. Section 1983 liability must be based on something more than respondeat superior or the right to control employees. *McQueen v. Beecerh Cmty. Sch.*, 433 F.3d at 470 (citing *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). In addition,

> "a supervisory official's failure to supervise, control or train the offending individual is not actionable unless the supervisor 'either encouraged the specific incident of misconduct or in some other way directly participated in it.'" *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir.1999) (quoting *Hays v. Jefferson* County, 668 F.2d 869, 874 (6th Cir.1982)). "At a minimum a plaintiff must show that the [supervisor] at least implicitly authorized, approved, or knowingly acquiesced in

5

>the unconstitutional conduct of the offending officers." *Id.* (quoting *Hays*, 668 F.2d at 874).

*Id.* As a result, "a prerequisite of supervisory liability under § 1983 is unconstitutional conduct by a subordinate of the supervisor." *Id.*; *see also, City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (*per curiam*) ("If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have *authorized* the use of unconstitutionally excessive force is quite beside the point."); *Claybrook v. Birchwell*, 199 F.3d 350, 361 (6th Cir. 2000) ("Furthermore, because the charged official conduct did not inflict any constitutional deprivation upon Quintana, defendant Kirchner, in his official capacity as the Chief Executive Officer of the Nashville-Davidson County Metropolitan Police Department, cannot be liable to her for any alleged neglect to train or supervise those officers, or failure to develop appropriate deadly force policies."); *Aull v. Osborne*, 2009 U.S. Dist. LEXIS 2914, *8 (W.D.Ky.2009) (quoting *Blyden v. Mancusi*, 186 F.3d 252, 265 (2d Cir.1999)) (internal quotation marks omitted) ("[F]or a supervisor to be liable under Section 1983, there must have been an underlying constitutional violation."); *Frodge v. City of Newport*, 501 F. App'x 519, 532 (6th Cir. 2012); *Farmer v. Logan Cnty., Ky.*, 2010 U.S. Dist. LEXIS 123557, (W.D. Ky. Nov. 22, 2010); *Dillingham v. Millsaps*, 809 F. Supp. 2d 820, 840 (E.D. Tenn. 2011).

In their briefing, Plaintiffs do not analyze how each named defendant, in their supervisory capacity, encouraged or participated in violating the constitutional rights of the Plaintiff class. Additionally, Plaintiffs fail to describe specific unconstitutional actions committed by subordinate employees. Instead, Plaintiffs describe KDOC's systemic failures and generalize that, as leaders of a failing system, Defendants must have acquiesced to the

6

unconstitutional conduct of their subordinates.[3] [R. 209 at 15 (Defendants' history of "implicit authorization, approval, and/or knowing acquiescence in the mismanagement of correctional education and in the awarding of [good time credits] directly correlates with Plaintiffs' injuries."). But Plaintiffs' proffer is insufficient to establish supervisory liability. It is undisputed that Kentucky's system of crediting inmates for taking educational and behavioral courses was severely mismanaged and that the leaders of KDOC failed to correct their errors until forced to do so by litigation. But "[s]upervisory liability under § 1983 does not attach when it is premised on a mere failure to act; it 'must be on active unconstitutional behavior.'" *Greene v. Barber*, 310 F.3d 889, 898 (6th Cir. 2002) (internal citations omitted). Despite Plaintiffs' scathing criticism of Defendants' leadership, they fail to provide evidence of any supervisor having committed a specific unconstitutional act. Consequently, the Court **GRANTS** summary judgment in favor of Defendants as to Plaintiffs' supervisory liability Section 1983 claim against Brown, Tilley, Thompson, Ballard, Erwin, Slemp, Noble, White, and Crews.

**B**

The Court next turns to Plaintiffs' direct Section 1983 liability claim. In their Complaint, Plaintiffs seek an award of monetary damages against Defendants Brown, Tilley, Thompson, Ballard, Erwin, Slemp, Noble, White, Crews, Cropp, King, and Sims for inadequately "awarding sentence credits as required by law," and inaccurately "computing and effecting the release on inmates in accordance with Kentucky law." [R. 222 at 4-5.] In opposition, Defendants argue that summary judgment should be awarded in their favor because they are shielded from liability by federal qualified immunity. [R. 171-1 at 8-27.]

---

[3] Though Plaintiffs allege Defendant Cropp to have committed constitutional violations, they fail to describe how Defendant Slemp, as his supervisor, encouraged or directly participated in the alleged violations.

7

Qualified immunity is a doctrine that shields government officials, including public university administrators, who perform discretionary functions from civil liability "unless their conduct violates clearly established rights." *Quigley v. Tuong Vinh Thai*, 707 F.3d 675, 680 (6th Cir. 2013) (citing *Bishop v. Hackel*, 636 F.3d 757, 765 (6th Cir. 2011)); *see also Corbett v. Garland*, 228 F. App'x 525, 529 (6th Cir. 2007) (finding qualified-immunity defense applied to university president and reversing district court's order granting plaintiff's motion for summary judgment). The question of whether qualified immunity attaches to an official's actions "is a purely legal question for the trial judge to determine prior to trial." *Garvie v. Jackson*, 845 F.2d 647, 649 (6th Cir. 1988). "[A] defendant is entitled to qualified immunity on summary judgment unless the facts, when viewed in the light most favorable to the plaintiff, would permit a reasonable juror to find that: (1) the defendant violated a constitutional right; and (2) the right was clearly established." *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 232, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009). Either prong may be addressed first, depending on the circumstances of the case before the court, and both prongs must be satisfied for the plaintiff to demonstrate that the defendant is not entitled to qualified immunity. *See Pearson*, 555 U.S. at 236; *see also Sumpter v. Wayne Cty.*, 868 F.3d 473, 480 (6th Cir. 2017) ("A plaintiff must satisfy both inquiries in order to defeat the assertion of qualified immunity.") (citing *Wesley v. Campbell*, 779 F.3d 421, 428-29 (6th Cir. 2015)).

The term "clearly established" means that the law was, at the time of the individual's conduct, "'sufficiently clear' that every 'reasonable official would understand that what he is doing' is unlawful" and the law placed the constitutionality of the conduct "beyond debate." *District of Columbia v. Wesby*, 138 S. Ct. 577, 589, 199 L. Ed. 2d 453 (2018) (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). A legal principle must also have a

8

"sufficiently clear foundation in then-existing precedent" and be "settled law" to be clearly established. *Id.* Once qualified immunity has been invoked, the plaintiff bears the burden of showing that qualified immunity is not appropriate. *Quigley*, 707 F.3d at 681 (citing *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006)).

Plaintiffs' right to not be detained past the expiration of their terms of incarceration under the Eighth and Fourteenth Amendment is established "beyond dispute." *Shorts v. Bartholomew*, 255 F. App'x 46, 51-52 (6th Cir. 2007) ("an incarcerated inmate has 'a liberty interest in being released at the end of his term of imprisonment'")); *see McNeil v. Dir., Patuxent Inst.*, 407 U.S. 245, 246 (1972); *Whirl v. Kern*, 407 F.2d 781, 791 (5th Cir. 1969) (holding that there is "no privilege in a jailer to keep a prisoner in jail beyond the period of his lawful sentence"); *Upshaw v. Mich. Dep't of Corr.*, 2016 Dist. LEXIS 152460 at *12 (W.D. Mich. Nov. 30, 2016). Consequently, the second prong of the qualified immunity analysis has been satisfied and the first prong is controlling.[4] As a result, the only issue remaining is whether the alleged facts, taken in the light most favorable to Plaintiffs, could lead a reasonable juror to conclude that the individual Defendants violated Plaintiffs' constitutional rights.

### 1

#### a

Defendants' first present a pair of preliminary arguments. First, Defendants argue that no individual defendant violated a named Plaintiffs' constitutional rights because "[n]amed plaintiffs have not established that they were actually over-detained." [R. 213 at 5-7.]

---

[4] Though Defendants argue in their Motion for Summary Judgment that the right to be given educational good time credits is not "clearly established," they concede by response that "[t]here is [] no dispute that when a prisoner's sentence has expired, he is entitled to release," and that, accordingly, "only the first element [of the qualified immunity analysis] remains in dispute, whether or not Defendants committed a violation." [*Compare* R. 171-1 at 8-14 *with* R. 213 at 4 (citing *Shorts*, 255 F. App'x at 52).].

9

Defendants contend that "[i]n order to establish that the released Plaintiffs were over-detained, each must cite to evidence in the record regarding exactly which courses they completed that entitle them to sentence credits […] and that they were not awarded those credits […]." *Id.* at 6. Defendants then discuss various named Plaintiffs and argue that the "Plaintiffs have not established that they earned any additional credits, nor that those credits were denied prior to their release," as to constitute a constitutional injury. *See id.* Essentially, Defendants contend that, because this litigation has led to each named plaintiff being granted the credit that he or she initially sought (which prevented their overdetention), their claims on behalf of the class are moot. [*See id*; *see also* R. 230 at 36-38.] But in opposition, Plaintiffs contend that at least two class representatives, David Voyles and Bobby Sebastian, were not given their owed credits prior to release and suffered a constitutional injury and that, regardless, other members of the class were overdetained aside from the named plaintiffs. [R. 217 at 1-3; R. 230 at 38.].

      Defendants' first argument is unpersuasive. While it is true that a named plaintiff "must be a member of the class which he or she seeks to represent […]," the fact that this litigation has prevented many of the named plaintiffs from having their constitutional rights violated does not render moot the injuries of the entire class, including those who experienced overdetention. *Sosna v. Iowa*, 419 U.S. 393 (1975). In fact, the Supreme Court has made clear that in class actions where claims are "capable of repetition, yet evading review," the claims of the class are not moot in whole just because the claims of the named plaintiffs are moot, unless the claims of the named plaintiffs were moot at the time the suit was filed and the class was certified. *Snead v. CoreCivi of Tenn., LLC*, 2018 U.S. Dist. LEXIS 108391 at *26-*27 (M.D. Tn. June 27, 2018) (collecting cases). Accordingly, because the claims of the named plaintiffs were live when this litigation was filed and when the class was certified, any later action by Defendants that may

10

have mooted certain named plaintiffs' claims "would primarily govern the type and amount of damages [] sufficient to compensate each plaintiff […]" while "the question of liability would largely be determined by [] common issues." *Snead*, 2018 LEXIS 108391 at *51.

**b**

Second, Defendants contend that "Plaintiffs cannot establish liability against Defendants Brown, Tilley, Thompson, Ballard, Erwin, and Slemp [as well as Noble, White, Crews, and Sims] because they were not directly involved in the allegedly unconstitutional conduct."[5] [R. 171-1 at 7-8 (citing *Sigley v. City of Parma Heights*, 437 F.3d 527, 533 (6th Cir. 2006) (finding a claim under Section 1983 to require "facts that, when construed favorably, establish (1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law.")]. In support, Defendants argue that there is no evidence of a causal connection between the class representatives' injuries and each individual defendant's conduct and that, accordingly, no Section 1983 liability can attach. [*See* R. 171-1 at 8 (citing *Farm Labor Org. Comm. v. Ohio State Highway Patrol*, 95 F. Supp. 723, 738 (N.D. Ohio. April 20, 2000)).] But, regardless of whether Plaintiffs have proven that Defendants' actual conduct led to Plaintiffs' harm, a "deprivation of a right secured by the Constitution or laws of the United States" can be alternatively proven by a finding of deliberate indifference. Regarding deliberate indifference, the Sixth Circuit mandates that:

> [A] plaintiff must (1) . . . demonstrate that a prison official had knowledge of the prisoner's problem and thus of the risk that unwarranted punishment was being, or would be, inflicted; (2) . . . show that the official either failed to act or took only ineffectual action under circumstances indicating that his or her response to the problem was a product of deliberate indifference to the prisoner's plight; [and] (3) . . . demonstrate a causal connection between the official's response to the problem and the infliction of the unjustified detention.

---

[5] Notwithstanding Defendants' briefing filed before the filing of Plaintiffs' Eighth Amended Complaint, the Court finds this argument equally applicable to Plaintiffs' claims against Noble, White, Crews, and Sims.

11

*Shorts*, 255 F. App'x at 55 (quoting *Sample v. Diecks*, 885 F.2d 1099, 1110 (3d Cir. 1989)). "[D]eliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action [or inaction.]" *Id.* at 53 (alterations in original) (quoting *Bd. of Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 410, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997)). Consequently, because Plaintiffs do not argue that the leaders of KDOC directly harmed Plaintiffs, but instead argue that their deliberate indifference caused harm, Defendants' second contention is unpersuasive.

## 2

### a

Following their preliminary arguments, Parties dispute whether any individual defendant's actions rise to the level of deliberate indifference. [R. 213 at 7-12; R. R. 217 at 3-5.] First, Parties dispute whether the individual defendants "had knowledge of the prisoner's problem and thus of the risk that unwarranted punishment was being, or would be, inflicted." *Shorts*, 255 F. App'x at 55. In support of summary judgment, Defendants argue that Plaintiffs have not "established that Defendants had individualized knowledge of their claims of entitlement [to educational good time credits] […]" and that "Plaintiffs have not cited to any specific written sentence calculation reviews for such credit that were reviewed and denied by an individual Defendant." [R. 213 at 8.] Summarily, Defendants contend that they each must have had individualized, actual knowledge of a named plaintiff's potential overdetention to preclude the shield of qualified immunity; and because they did not, Defendants are owed summary judgment. *See id.* at 9.

In opposition, Plaintiffs assert that "knowledge of [a] prisoner's problem" can be imputed to each individual defendant because each had a general awareness of KDOC's systemic failings.

12

[R. 209 at 7-9.] In support, Plaintiffs cite two sister circuit cases in which the first prong of the *Shorts* deliberate indifference test was expanded to include awareness of an ongoing systemic issue and was not limited to individualized knowledge of each prisoner's problem (or, in this matter, each named plaintiff's problem). *Id.* (first citing *Wharton v. Danberg*, 854 F.3d 234, 242 (3d. Cir. 2017) (finding the deliberate indifference standard to be "flexible" and to permit "[l]itigation against top administrators, seeking structural reforms of the agency as a whole.") *and then Driver v. Marion Cty. Sheriff*, 859 F.3d 489, 494 (7th Cir. 2017) (certifying class claims against a Sheriff who had knowledge of "widespread excessive delays" in releasing inmates caused by an ineffective computer system).

The Court agrees with Defendants. Though sister circuits have expanded the definition of "knowledge" in the qualified immunity context to include general awareness of a systemic issue, the Sixth Circuit has not done so. In fact, when discussing the issue of knowledge in this context, the Sixth Circuit has reiterated that a defendant's knowledge must be individualized. *See, e.g.*, *Bishop v. Hackel*, 636 F.3d 757, 767 (6th Cir. 2011) ("a prison official who was unaware of a substantial risk of harm to an inmate may not be held liable under the Eighth Amendment even if the risk was obvious and a reasonable prison official would have noticed it."); *Garrett v. City of Madison Heights*, 407 F.3d 789, 797 (6th Cir. 2005) ("If the officers failed to act in the face of an obvious risk of which they should have known, but did not, then they did not violate the Fourteenth Amendment."); *Rhoades v. Tilley*, 2022 U.S. App. LEXIS 6158 at *9 (6th Cir. 2022) ("In the deliberate indifference context, we have rejected 'imputing knowledge from one defendant to another' and have said that courts must 'evaluate each defendant individually.'") (collecting cases).

13

A review of the record provides no evidence of actual, individualized knowledge on behalf of defendants Brown, Thompson, Cropp, Tilley, Ballard, Slemp, Erwin, [Noble, White, Crews, or Sims]. Accordingly, these defendants are shielded by qualified immunity and are each awarded summary judgment as to Plaintiffs' Section 1983 claims. But the record provides otherwise as to defendant King.[6] Attached as an exhibit to Defendants' Motion for Summary Judgment is a letter dated August 13, 2012, in which named plaintiff Hopper requests assistance from defendant King in ensuring he receive his correct amount of earned educational good time credit. [R. 171-4.] In response to the letter, King wrongly concludes that "[t]he additional credits being requested have been denied correctly pursuant to Corrections Policy and Procedure" and rejects Hopper's appeal. *Id.*; R. 191. Consequently, unlike for his co-defendants, the record includes evidence of King's actual, individualized knowledge. Accordingly, the Court must analyze whether Plaintiffs' claims against King survive the second prong of *Shorts*.

**b**

Under the second prong, Plaintiff must "show that [King] failed to act or took only ineffectual action under circumstances indicating that his [] response to the problem was a product of deliberate indifference to the prisoner's plight." *Shorts*, 255 F. App'x at 55. In support of summary judgment, Defendants argue that Plaintiffs generally fault "Defendants' efforts to improve their system for monitoring and maintaining reliable records to ensure

---

[6] The Court notes that the record in this matter is thousands of pages long. The Court's review has only located one document clearly showing that an individual defendant (King) had knowledge of a named plaintiff's potential harm. Though other documents may exist in the record that implicate other individual defendants, Plaintiffs do not cite or explain these documents and "judges are not like pigs, hunting for truffles" that might be buried in the record. *Emerson v. Novartis Pharms. Corp.*, 446 Fed. Appx. 733, 736 (6th Cir. 2021); *see e.g.,* R. 171-1 at 3 (finding credits to have been "audited by JB per Martha Slemp.").

14

Plaintiffs' timely release." [R. 213 at 11 (citing R. 198).]. Consequently, Defendants contend that "Plaintiffs seek to apply the standard for supervisory liability upon each Defendant without any distinction or analysis as to their actual roles." [R. 213 at 11.] In response, Plaintiffs argue that "Defendants did nothing to investigate and rectify overdetentions for almost six years after this lawsuit was filed, and would never have done so had this Court not ordered the audit." [R. 217 at 3.] Accordingly, Plaintiffs rely on a theory of systemic wrongdoing to prove each individual defendant, including King's, wrongdoing. *See id.*

But Plaintiffs' argument is unpersuasive. When discussing deliberate indifference in the overdetention context, the Sixth Circuit analyzes a defendant's individual actions. *See, e.g., Rhoades*, LEXIS 6158 at *13-*15 (finding a defendant to have not acted with deliberate indifference when "the scope of the official's personal duties" did not include overseeing the release of inmates); *Shorts*, 255 Fed. App'x at 7-27 (collecting cases in which the actions of individual defendants were analyzed for deliberate indifference). Here, Plaintiffs provide no evidence as to what action King specifically engaged in that rose to the level of specific indifference. Instead, Plaintiffs group King and every other individual defendant and argue that the group collectively failed as leaders. But, without having provided specific analysis regarding King's actions, Plaintiffs fail to preclude the application of qualified immunity. Accordingly, Defendant King is also awarded summary judgment as to Plaintiffs' Section 1983 claims.

## C

Finally, the Court turns to Plaintiffs' argument that their state claims are owed summary judgment and that the Court should retroactively grant ninety days of educational good time credit for "all class members [] for all courses they completed." [R. 198 at 16; R. 209 at 33.] In support of summary judgment, Plaintiffs argue that "[b]ecause deliberate indifference carries a

15

heavier burden of proof than mere negligence, […] the facts demonstrating Defendants' deliberate indifference to class members' overdetentions support with even greater force than Defendants' obvious negligence." [R. 217 at 5 (citing *Estelle v. Gamble*, 238 U.S. 97, 104 (1976)).]. But Defendants have been awarded summary judgment as to Plaintiffs' deliberate indifference claim and, consequently, Plaintiffs have not proven their state law claims and are not owed summary judgment.

Next, Plaintiffs contend that, because "Defendants offer the Court no justification for their request that it fix the mess created by denying credit […]" the Court should award ninety days of credit to every class member for every course completed. [R. 217 at 6.] But, at this stage, the Court declines to unilaterally award credit to class members without specific evidence that each member is owed that credit. As demonstrated by Defendants' argument in opposition to Plaintiffs' request, the necessity of granting credit for categories including certificates, and evidence-based courses is still heavily in dispute. [*See* R. 213 at 12-17.] Consequently, Defendants have established genuine issues of material fact precluding summary judgment.

Furthermore, Plaintiffs' request fails to take into consideration the court's limited power of judicial review. Though Plaintiffs could petition the Kentucky legislature to award each class member a certain amount of sentence credit as a general remedy to KDOC's mismanagement, it cannot ask the Court to do so. This is because a "court's role is not to impose its own political or policy judgments on the Commonwealth or its people." *Bourke v. Beshear*, 995 F. Supp. 2d 542, 543 (W.D. Ky. February 12, 2014). Instead, the "Court's role is merely to apply the governing state law, not to make it, or remake it." *Vine v. City of Lansing Police Dep't*, 930 F. Supp. 1177, 1181, n.3 (W.D. Mich. June 21, 1996). Accordingly, Plaintiffs' request for the Court to

16

unilaterally award each class member ninety days of sentencing credit, by no authority aside from its own policy preferences, is denied.

### III

"The purpose of qualified immunity is to give government officials breathing room to make reasonable but mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Schulkers v. Kammer*, 955 F.4d 520, 532 (6th Cir. 2020). Though Plaintiffs present a scathing critique of KDOC and its leaders and identify a number of systemic problems, they fail to analyze how each individual defendant's actions perpetrated harm and rose to the level of deliberate indifference. Absent a change in the governing case law in the Sixth Circuit, systemic failures, without more specificity regarding the defendants, is not enough. Consequently, the Court **ORDERS** as follows:

1. Defendants' Motion for Summary Judgment [R. 171-1] is **GRANTED**;
2. Plaintiffs' Motion for Summary Judgment [R. 209] is **DENIED**;
3. Defendants Brown, Thompson, Cropp, Tilley, Ballard, Slemp, King, Erwin, Noble, White, Crews, and Sims are **DISMISSED**.

This the 30th day of March, 2022.

Gregory F. Van Tatenhove
United States District Judge